616 A.2d 46

**John M. URBANIC**

**v.**

**Darwin ROSENFELD, Claire Rosenfeld, Todd Rosenfeld and Borough of Churchill.**

**Appeal of Darwin ROSENFELD, Claire Rosenfeld, Todd Rosenfeld, Appellants. (Two Cases)**

**John M. URBANIC**

**v.**

**Darwin ROSENFELD, Claire Rosenfeld, Todd Rosenfeld and Borough of Churchill.**

**Appeal of BOROUGH OF CHURCHILL, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 11, 1992.

Decided Sept. 11, 1992.

Petition for Allowance of Appeal
Granted March 4, 1993.

470

472

Lynette Norton, for appellants Darwin, Claire and Todd Rosenfeld.

John W. Jordan, for appellant Borough of Churchill.

G.N. Evashavik, for appellee.

Before COLINS and PELLEGRINI, JJ., and BARRY, Senior Judge.

PER CURIAM.

This is a consolidated appeal filed by Darwin Rosenfeld, Claire Rosenfeld and Todd Rosenfeld (collectively, the Rosenfelds) and the Borough of Churchill (Borough) from an order of the Court of Common Pleas of Allegheny County, entering judgment in favor of John M. Urbanic (Urbanic) and awarding him compensatory damages against both the Rosenfelds and the Borough and punitive damages against the Rosenfelds only for violations of his civil rights under 42 U.S.C. § 1983.

The Urbanics and the Rosenfelds live a few houses away from each other on Garrick Drive, Borough of Churchill, Pennsylvania. Urbanic's four-count action against the Rosenfelds and the Borough, claiming that they engaged in abuse of process, malicious prosecution and illegal conspiracy and vio-

lated his civil rights by harassing him and filing criminal complaints against him, are based on events which occurred during a neighborhood feud between the Urbanics and the Rosenfelds beginning in 1981 over the conduct of their children and which resulted in the Rosenfelds filing criminal charges against Urbanic.

In 1981, Urbanic's son, then 12 years old, was among a group of boys throwing snowballs. After a snowball struck the Rosenfeld home, Urbanic's son and another boy returned to the Rosenfeld's home to apologize. The Rosenfelds, concerned about a pattern of incidents that they had been experiencing, called the Borough police to take the boys' statements. Urbanic, upon learning that a police report had been filed, became upset that his son's name appeared in what he believed was an inaccurate report and sought to have it corrected. Urbanic then called Darwin Rosenfeld and purportedly threatened to firebomb the Rosenfelds' house. The following day, three Borough police officers visited the Urbanic home to inform Urbanic that he was "under arrest" for threatening Darwin Rosenfeld. He was not, however, taken into custody. Following this incident, Darwin Rosenfeld filed a private criminal complaint which was heard and dismissed by a district justice. Urbanic did not plead this incident in his complaint.

Another major eruption between the Urbanics and the Rosenfelds occurred in 1984. In that year, the Rosenfelds reported Urbanic's son to juvenile authorities for purportedly striking Todd Rosenfeld while riding on a school bus. Two weeks later, Darwin Rosenfeld filed the second criminal complaint against Urbanic for allegedly spitting at Todd Rosenfeld while he was on his way to his school bus stop. The charges against Urbanic were heard by a second district justice who found Urbanic not guilty.

The feud next erupted in 1986, when Todd Rosenfeld reported to the Borough police that Urbanic recklessly drove and harassed him. He alleged that he was driving to school when Urbanic followed him, passed him, slammed on his brakes and refused to move for several minutes, even though

there was no reason for him to do so. This incident resulted in the Borough police filing criminal charges of reckless driving and harassment against Urbanic. A third district justice, however, dismissed those charges, resulting in the third not-guilty verdict for Urbanic.

In between these major eruptions, there were minor flare-ups between the Urbanics and the Rosenfelds which did not lead to the filing of criminal charges. In 1984, the Rosenfelds reported to the police that Urbanic was taking photographs of their son at the school bus stop. On another occasion, Darwin Rosenfeld filed a complaint with the police about Urbanic blocking Todd Rosenfeld's path and making anti-Semitic remarks.

Borough records produced at trial showed that the Urbanics and especially the Rosenfelds called on Borough police not involving each other either for service or as a result of complaints about them or their families. Urbanic was reported to the police for throwing a rake down on the street before a speeding motorcyclist. The Urbanics called the police when an elderly member of the family was ill and the police responded by sending an ambulance. Urbanic also made two complaints about a neighbor's dog and each was investigated by the police.

In addition to the incidents already set forth regarding Urbanic, the Rosenfelds called on the police to either report possible illegal activity or make calls for assistance for themselves or others. The Borough police either took action or provided assistance on all of those reports.[1]

---

1. The Borough Police Chief, Charles R. Stahl, testified that Borough records indicated that the Rosenfelds made the following calls for service:

| Date | Nature | Claire (C) or Darwin (D) |
| --- | --- | --- |
| August 25, 1974 | Neighbor's door open, possible entry | C |
| May 26, 1978 | Another boy threw stone at son Scott | D |
| March 9, 1979 | Call for assistance to aid man who cut his head | D |
| May 5, 1979 | Boys with BB guns on hill | D |

In 1987, Urbanic brought the instant suit against the Rosenfelds and the Borough, claiming that the 1984 and 1986 incidents evidenced abuse of process, malicious prosecution, conspiracy and violation of his constitutional right to equal protection under 42 U.S.C. § 1983. In regard to the civil rights count to the Section 1983 claim, Urbanic alleged that

| Date | Description | Code |
|------|-------------|------|
| May 18, 1979 | Two boys on hill shooting air rifles | C |
| May 14, 1980 | Criminal mischief | C |
| June 25, 1980 | Golf balls coming down street | C |
| August 21, 1980 | Golf balls coming down street | C |
| October 25, 1980 | | D |
| August 21, 1981 | Dog foaming at mouth | C |
| July 18, 1982 | Lawn chair taken from front porch and put in backyard | C |
| July 25, 1982 | Dog roaming loose | C |
| October 7, 1982 | Pickets at high school causing delay | C |
| February 6, 1983 | Flares put up around Claire Rosenfeld's disabled vehicle | C |
| May 19, 1983 | Intruders on their property | D |
| July 3, 1983 | Neighbor's door open, possible entry | C |
| August 23, 1983 | Solicitors selling magazines in the area | D |
| October 4, 1983 | Petty mischief | D |
| November 25, 1983 | Illegal parked vehicle | D |
| November 25, 1983 | Neighbor's front door open, possible entry | C |
| May 4, 1984 | Traffic light malfunction | C |
| May 17, 1984 | Unknown car coming out of someone's house | C |
| June 15, 1984 | Bushes blocking view at intersection | C |
| September 24, 1984 | Noise in basement | C |
| October 9, 1984 | Call for assistance for a third party's car parked in lot with steam coming out of it | D |
| October 10, 1984 | Dog running lose | D |
| May 10, 1985 | Speeding in neighborhood | D |
| June 20, 1985 | Mailbox blown up | D & C |
| October 23, 1985 | Dead rabbit on the highway | D |
| November 29, 1985 | Mailbox knocked down | D |
| July 8, 1986 | Disabled vehicle on Graham Avenue | D |
| September 11, 1986 | Cab goes through intersection | C |
| October 26, 1986 | Vending of food in neighborhood | D |
| December 4, 1986 | Disabled vehicle | C |

his equal protection rights were violated because the Rosenfelds and the Borough were conspiring to intimidate, harass and annoy him and denied him the same level of services provided by the Borough police to the Rosenfelds. As to the Section 1983 count, Urbanic also named the Borough as a defendant, contending that it was conspiring with the Rosenfelds to commit these acts.

The basis for Urbanic's allegation that there was an illegal conspiracy was that the Rosenfelds and the Borough were intimately connected by virtue of Claire Rosenfeld's election to Borough Council in 1982 and Darwin and Todd Rosenfeld's status as volunteer firefighters within the Borough. Darwin Rosenfeld joined the Churchill volunteer fire company in 1982, while Todd Rosenfeld joined in 1984.

Trial was held on December 11, 1989. On December 18, 1989, the jury returned a verdict for $22,000 in compensatory damages against both the Rosenfelds and the Borough, and $100 in punitive damages against the Rosenfelds only. However, even though the case was submitted to the jury on all four counts, the Rosenfelds filed a motion to mold the verdict to reflect that the jury determine liability solely with regard to the Section 1983 count and to reflect a jury verdict in favor of the Rosenfelds and the Borough on the common law counts of abuse of process, malicious prosecution and illegal conspiracy.[2] The trial court granted the motion and molded the verdict as requested. Both the Rosenfelds and the Borough then filed post-trial motions alleging numerous errors and requesting judgment n.o.v. or a new trial to set aside the Section 1983 verdict, which were denied. This appeal followed.

The Rosenfelds and the Borough contend that the trial court erred in not granting either of their motions for judgment n.o.v. because, *inter alia*, the facts do not support:

2. The Motion to Mold the Verdict was based on plaintiff's counsel's statement that he believed his "plaintiff lost" the common law tort claims against the Rosenfelds and the Borough. Although Urbanic opposed the motion, no appeal was taken from the trial court's order molding the verdict.

- that the Rosenfelds were acting under color of state law, merely because Claire Rosenfeld's status as a Borough councilmember or because of Darwin and Todd Rosenfeld's membership in the volunteer fire company;
- that the Rosenfelds and the Borough did not conspire to deprive Urbanic any rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;
- that there was a Borough custom or policy to deny the Urbanics the appropriate level of police protection;
- that as a matter of law, there is no violation of the equal protection clause merely because one person received more police services than another.

They also contend, *inter alia,* that they are entitled to a new trial because the charge to the jury was improper or the trial court's ruling was incorrect because:

- the charge stated an overbroad or oversimplified definition of state action;
- the charge provided that the jury could award damages for the 1981 and 1984 incidents which were both barred by the statute of limitations and the 1981 incident was not pled;
- failed to award a new trial on the basis of Urbanic's willful interjection into evidence that the Borough and the Rosenfelds are insured;
- by erroneously charging the jury as to the authority of councilmembers and Claire Rosenfeld's status as such;
- by charging the jury that a police officer is required to investigate an incident he has not witnessed, and equating the issuance by the police of a citation upon information received with a constitution violation.

An appellate court reviewing a trial court's denial of a motion for judgment n.o.v. is to decide whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference to be drawn from such evidence. *Wenrick v. Schloemann–Siemag Aktiengesellschaft,* 523 Pa. 1, 564 A.2d 1244 (1989). In reviewing a denial of motion for a new trial, an appellate

court must determine whether the trial court abused its discretion in entering a jury verdict because the verdict is so contrary to the weight of the evidence that it shocks one's sense of justice and makes a new trial imperative so that right may be given another opportunity to prevail. *Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 289, 265 A.2d 516, 518 (1970). Moreover, when a verdict finding a federal violation of Section 1983 is involved, we must conduct our review in accordance with how the rights and defenses to that action have been defined by federal law. *Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *Greenwich v. Murtagh*, 144 Pa.Commonwealth Ct. 624, 601 A.2d 1352 (1992).

## I.

## SECTION 1983

Under federal law, Section 1983 [3] does not create any substantive rights, but merely serves as a "vehicle or ... 'device' by which a citizen is able to challenge conduct by a state official whom he claims has deprived or will deprive him of his civil rights." Harry Blackmun, *Section 1983 and Federal Protection of Civil Rights—Will The Statute Remain Alive or Fade Away?*, 60 N.Y.U.L.Rev. 1, 1 (1985). "[O]ne cannot go into court and claim a 'violation of Section 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). In effect, Section 1983 is a form of action akin to mandamus or equity which requires a party to meet certain threshold requirements before relief can be granted on the underlying violation.

To maintain a cause of action under Section 1983, a plaintiff is required to establish only that:

---

**3.** 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

● some person has deprived him or her of some cognizable federal right; and

● deprived him or her of that right while acting under color of state law.

*West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

## II.

## THE ROSENFELDS

### A. State Action

Urbanic contends that the Rosenfelds conspired with the Borough police to deprive him of his constitutional right to equal protection of the law. He contends that the Rosenfelds were acting under color of law because Claire Rosenfeld was a member of the Borough Council and a member of its police committee and because of Darwin and Todd Rosenfeld's membership in the Churchill Volunteer Fire Department. Because of their status, Urbanic contends that they had the ability to act independently and placed them in a position to conspire with the Borough police to deprive him of equal police protection.

To hold a person liable under Section 1983, a plaintiff must establish that the defendant was acting "under color of law." Those who hold public office, such as Claire Rosenfeld, are presumed to have the ability to act under color of law. While there is a presumption that she has that ability, Urbanic is still required to establish that she misused the power of her official position to aid in the purported violation of his civil rights. *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). Urbanic argues that Claire Rosenfeld's position as a council member, particularly her membership on the police committee, enabled her to exert influence and control over Borough officials so that they would provide him with unequal police protection. It is not the ability, however, to exert influence or control that establishes

that a person is acting under color of law; it is actually using that influence or control which establishes that a person is acting "under color of law." *See, e.g., Manax v. McNamara,* 842 F.2d 808 (5th Cir.1988).

■ Even though we are required to review all evidence and inferences most favorable to Urbanic, the allegation that Claire Rosenfeld used the badge of her office to deprive him of his civil rights, merely because she holds an office, is insufficient by itself to establish that she was acting "under color of state law." Urbanic offered no evidence that Claire Rosenfeld employed the slightest shred of the power of her public office in any way in the ongoing dispute that her family had with Urbanic. In fact, one of the major events in which Claire Rosenfeld is accused of misusing the badge of her office is the 1981 incident which occurred before she was even elected to Borough Council in 1982. Moreover, the evidence does not show that Claire Rosenfeld's numerous calls for police service went up after she was elected to Borough Council.

■■ As to Darwin and Todd Rosenfeld's membership in the Churchill Volunteer Fire Company, there is no indication that they were acting under color of state law for any of the actions which Urbanic claims violated his civil rights. While the firefighting activities of volunteer fire companies, which are private, non-profit corporations, have been held to be activities that are "traditionally the exclusive prerogative of the State,"[4] *see Janusaitis v. Middlebury Volunteer Fire Co.,* 607 F.2d 17 (2d Cir.1979), we do not believe that the non-firefighting activities of individual volunteer firefighters give rise to a Section 1983 claim because when they are not acting in that capacity, they are not "state actors" and cannot violate

4. Because of this public function, volunteer fire companies and their members are treated as "local agencies" entitled to tort immunity only for acts committed or omitted during their performance of public firefighting duties. *Salazar v. Taylor's Dining Room, Inc.,* 136 Pa.Commonwealth Ct. 527, 583 A.2d 1264 (1990), *petition for allowance of appeal granted,* 528 Pa. 616, 596 A.2d 161 (1991). *See also Weaver v. Union City Volunteer Fire Department,* 102 Pa.Commonwealth Ct. 298, 518 A.2d 7 (1986); *Wilson v. Dravosburg Volunteer Fire Department No. 1,* 101 Pa.Commonwealth Ct. 284, 287, 516 A.2d 100, 102 (1986).

Section 1983. While there may be fact situations where a volunteer fire company and its members could be operating under color of state law, that possibility is not remotely presented in this case. The record is devoid of any evidence that any of the actions which Urbanic contends led to the violation of his civil rights were committed by Darwin or Todd Rosenfeld when they were fighting fires.

## B. Conspiracy

Our inquiry does not end with the conclusion that the Rosenfelds were incapable of violating Urbanic's civil rights under color of state law because Urbanic failed to show that they were using the badge of their offices to deprive him of his civil rights. Urbanic is still entitled to relief under Section 1983 if he can establish that the Rosenfelds, in their *private* capacity, and the Borough police somehow reached an understanding to deprive him of his civil rights. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The involvement of the police in such a conspiracy [5] plainly provides the requisite state action and the private parties can be held liable under Section 1983 because they are acting under color of law in that they jointly participate with public officials in the prohibited act. *United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

Construing all that evidence in the light most favorable to Urbanic, we must determine whether, as a matter of law, there was sufficient evidence to establish that the Rosenfelds engaged in a conspiracy with the Borough to deprive Urbanic of his constitutional rights. At trial, Urbanic, not surprisingly because of the nature of a conspiracy, was unable to provide

5. A conspiracy is a combination of two or more persons to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose. *Raneri v. DePolo*, 65 Pa.Commonwealth Ct. 183, 187, 441 A.2d 1373, 1376 (1982). In the context of the present appeal, the alleged co-conspirators must be shown to have agreed, at least tacitly, to commit acts which will deprive Urbanic of equal protection of the law. *See, e.g., Santiago v. City of Philadelphia*, 435 F.Supp. 136 (E.D.Pa.1977).

any direct evidence of any conspiracy to deprive him of equal police protection. However, he contends that there was sufficient circumstantial evidence to establish such a conspiracy. Besides citing the 1981, 1984 and 1986 incidents resulting in the criminal complaints of which he was found not guilty, Urbanic presented a number of events, the confluence of which he believes the jury could base a finding of such a conspiracy.

He points to the fact that the Rosenfelds called the police and were present when his son was held and asked questions about the snowball incident (R.R. 204a); that he was never given an opportunity to express his version of the events (R.R. 255a); that he was denied review of the police report on the 1981 incident before it was filed (R.R. 281a–282a); that he was not permitted to face his accuser (R.R. 298a–299a); that Robert W. Goehring, the Borough Solicitor, represented Todd Rosenfeld at the hearing on the 1986 criminal charges (R.R. 195a); and that at the 1986 hearing Goehring allegedly made statements concerning information which could only have derived from the Rosenfelds (R.R. 311a). Although Urbanic admitted that he did not know if there were any conversations or written documents between the Rosenfelds and Borough officials to commit unconstitutional acts (R.R. 310a–313a), he testified that he felt the Borough officials were acting to deprive him of his rights at the Rosenfelds' behest and had a "gut feeling" that the Rosenfelds were somehow involved. (R.R. 313a).

 "[A] conspiracy must ordinarily be proved by circumstantial evidence, . . . ." *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 212 n. 9, 412 A.2d 466, 473 n. 9 (1979). Circumstantial evidence establishes a conspiracy if it logically leads to the conclusion that one exists. However, if the evidence only allows the jury to base a finding on conjecture or speculation, then the circumstantial evidence is insufficient to establish a conspiracy. A finding of an actionable conspiracy would be based on conjecture if all that is shown is that two persons with the right to do a thing happen to do the thing at the same time. *Fife v. Great Atlantic & Pacific Tea Co.*, 356

Pa. 265, 267, 52 A.2d 24, 39 (1947). In considering the application of these principles, we keep in mind that the act of furnishing information to the police does not constitute joint action under color of state law which would render a defendant liable under Section 1983, *see, e.g., Benavidez v. Gunnell,* 722 F.2d 615, 618 (10th Cir.1983), and that a defendant's mere opportunity to conspire does not sustain an inference that such a conspiracy has, in fact, taken place. *Tose v. First Pennsylvania Bank,* 648 F.2d 879, 894 (3d Cir.1981).

While the record shows that the Rosenfelds made many police calls to which the police responded and that they are actively involved in their community, we do not believe that Urbanic's evidence logically leads to the conclusion that the Borough and the Rosenfelds conspired to harass him. The evidence presented was nothing more than "wrongs" he believed were committed against him that somehow has to be the result of a conspiracy. A mere "gut feeling" that someone may be engaged in a conspiracy to violate another's constitutional rights is insufficient to establish that there was, in fact, a conspiracy. Nothing was before the jury to lead a reasonable person to logically conclude that a conspiracy existed to deprive Urbanic of his civil rights. Because there was no conspiracy and the Rosenfelds were not independently acting under color of state law, judgment n.o.v. should have been entered in their favor.

### C. Equal Protection Clause

Although we have determined that Urbanic has not met the prerequisite that the Rosenfelds acted or conspired with someone acting under color of state law, we will address the issue of whether, as a matter of law, there has been any showing that Urbanic's right to equal protection under the Fourteenth Amendment to the United States Constitution has been violated by a claim that the Rosenfelds had conspired to deny him the same level of police protection that was provided to the Rosenfelds.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution guarantees that no person

or class of persons shall be denied the same protection of law which is enjoyed by other persons or classes of persons in like circumstances. U.S. Const. Amend. XIV, § 1; *Home Builders Association of the Alleghenies v. Richland Township,* 134 Pa. Commonwealth Ct. 249, 578 A.2d 1009 (1990). To determine whether a classification violates the Fourteenth Amendment, the United States Supreme Court has stated:

> Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. (Citations omitted).

*McGowan v. Maryland,* 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

When bringing a claim that a violation of the Equal Protection Clause occurred, plaintiffs cannot establish such a violation merely by showing they are treated differently than others because of who they are. Plaintiffs claiming such a violation must establish that they are being treated differently, regardless of who they are as a person, because they belong to a certain classification of people causing those acting under color of state law to treat them differently than they would other citizens in general. *See Regents of the University of California v. Bakke,* 438 U.S. 265, 292–293, 98 S.Ct. 2733, 2749, 57 L.Ed.2d 750 (1978). The requirement that there be a "class," however, does not mean that there cannot be a "class" consisting of only one person. *See Falls v. Town of Dyer,* 875 F.2d 146 (7th Cir.1989). For example, if there is one Eskimo in a community and the police fail to respond to his or her complaints because he or she is an Eskimo, then there would be an equal protection violation even though there is only one person in that "class."

■ We do not, however, have that type of situation here. All we have in the present appeal is the allegation that the Rosenfelds received better police services than Urbanic.[6] This allegation is based on the fact that the police responded to the Rosenfelds' many service calls more often than they did for Urbanic. Urbanic also claims that in disputes between him and the Rosenfelds, the police purportedly sided with the Rosenfelds.

■ First, the Rosenfelds received more police services than Urbanic simply because they requested such services more often than he did. There was no evidence presented to the jury tending to show that Urbanic did not receive police service when he did request it. Second, even if the police sided with the Rosenfelds in disputes with Urbanic, this proves nothing more than that the police happened to believe the Rosenfeld's version of the events over that of Urbanic. Such an exercise of judgment is within a police officer's discretion. Just because one party makes more calls for service, has a better relationship with the police, and the police may have mistaken views about another person, without more, does not elevate every neighborhood dispute in which the police are involved to a "federal case" in which violations of the Equal Protection Clause of the Fourteenth Amendment are implicated.

Accordingly, we conclude that Urbanic has not established that the Rosenfelds deprived him of a cognizable federal right and judgment n.o.v. should have been entered on that ground alone.

### III.

### THE BOROUGH

■ As a result of the United States Supreme Court's rejection of the imposition of Section 1983 liability upon a local

---

6. We note that the right to receive police assistance is not a constitutionally protected right, and, absent some special or custodial relationship between the police and the plaintiff, the police have no duty to provide adequate protection. *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).

governmental entity on the basis of respondeat superior, *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), defendants in a Section 1983 action can only be found liable for their own conduct. To impose liability on a local government, plaintiffs must establish that the action they claim deprives them of their civil rights is an unconstitutional implementation or execution of a municipal policy or custom. *Monell.* Urbanic appears to contend, separate and apart from his conspiracy argument, that the Borough is also liable because it had both an official policy and a custom or practice that resulted in a violation of his civil rights. He contends:

● that the Borough's illegal policy of allowing its police officers to file criminal complaints on information received rather than only when the police officer is an eyewitness to the event underlying the criminal complaint; and

● that the Borough has a custom of harassing, intimidating and annoying him while supporting and carrying out the goals of the Rosenfelds.

## A. *Official Policy*

A local government is liable for implementation of an official policy, no matter how promulgated, if the policy acts to deprive a person of a federally protected right. Such a policy must be a deliberate or conscious one "made by law-makers or by those who edicts or acts may fairly be said to represent official policy ..." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38. Urbanic's claim that the Borough violated his civil rights appears to be based on the 1986 incident when a Borough police officer issued a complaint against Urbanic for reckless driving and harassment upon information received from Todd Rosenfeld. Urbanic asserts that a complaint based upon information received is insufficient and that complaints should only be based on a police officer's eyewitness observations, the police officer's personal knowledge of the incident in question, or on facts obtained through an investigation. Urbanic's claim is without merit for two reasons.

Assuming that the allegation is true and that police officers must have independent knowledge of the facts prior to filing a criminal complaint, Urbanic's Section 1983 claim is not based upon some unconstitutional implementation of a Borough policy regarding the filing of criminal complaints which violates his due process rights. His claim is for a violation of his equal protection rights due to treatment different than that accorded to the Rosenfelds by the Borough. A purported Borough policy concerning the procedure for filing criminal complaints is not even mentioned in Urbanic's complaint, nor is it relevant to the violation being pled other than as evidence of the underlying violation.

As to the claimed violation, the Pennsylvania Criminal Rules of Procedure specifically authorize a police officer to file a criminal complaint upon information received. Since being amended in 1985, Pa.R.Crim.P. No. 53(a)(7) only requires that "a verification by the law enforcement officer [contain] that the facts set forth in the citation are true and correct to the officer's personal knowledge, information or belief." There is no requirement under the rule that a criminal complaint must be based on the police officer's observations or personal knowledge prior to being filed.

Accordingly, no Section 1983 liability can be imposed upon the Borough because of an official policy.

### B. Custom or Usage

 In the absence of an official policy having the effect of violating a person's civil rights, a local government may still be sued for a deprivation of a federal right if a practice by the local government has been in existence for a sufficient length of time that those with the ultimate responsibility knew or should have known that such a practice has become customary. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Urbanic's allegation that the Borough had a custom of harassing, intimidating and annoying him while supporting the goals of the Rosenfelds has the sound of an equal protection claim. He bases this contention on a number of instances where the Borough police responded

to the Rosenfelds' service requests as compared to the number of times where they either failed to respond to Urbanic's requests or took action against him.

The issue, then, is whether the Equal Protection Clause is violated when one person receives a "better" police response to his or her calls as compared to another person because the police believe the latter is a "violent, confrontational troublemaker."

The police have discretion to make decisions on how to respond to service calls based on past experiences they have had with the parties. Barring an animus toward one party because that party belongs to a protected class, police officers can respond based upon their personal knowledge of the individuals. Their belief that Urbanic was a "violent, confrontational troublemaker," for example, is a rational basis upon which to classify their response and is not a Section 1983 violation even though their judgment about him may be erroneous. Our review of the record does not reveal any evidence that can logically lead to the conclusion that there was a custom of having Urbanic harassed.

Because there is no evidence of an official policy or custom instituted by the Borough to harass or annoy Urbanic, the Borough's motion for judgment n.o.v. should have been granted.

## IV.

## MOTION FOR NEW TRIAL

Because we have held that a judgment n.o.v. should have been entered because no Section 1983 claim has been made out, we need not discuss the errors which the Rosenfelds and the Borough contend were contained in the charge to the jury or were committed during the trial.

An appropriate order will be entered.

490 ■■■■■■■■■■■■■■■

## ORDER

AND NOW, this 11th day of September, 1992, the order of the Court of Common Pleas of Allegheny County dated June 20, 1991 denying the parties' motions for post-trial relief, is hereby reversed and the case is remanded for entry of judgment n.o.v.

Jurisdiction relinquished.