645 A.2d 383

**Wilson Javier SANCHEZ, by his parent and natural guardian, Elba RIVERA, in her own right, Appellant,**

v.

**Wilfredo MONTANEZ and Community Action Program.**

Commonwealth Court of Pennsylvania.

Argued May 10, 1994.

Decided June 27, 1994.

382

John J. Stanzione, for appellant.

Stephen E. Geduldig, for appellees.

Before McGINLEY and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Wilson Javier Sanchez and his mother Elba Rivera (Sanchez) appeal a Lancaster County Court of Common Pleas order granting defendant Community Action Program of Lancaster County's (CAP) motion to amend new matter and motion for summary judgment on the issue of governmental immunity.[1] They also appeal the trial court's order entering summary judgment on the issue of CAP's vicarious liability.

The facts are as follows. CAP was designated as the community action program for Lancaster County by resolution of the Lancaster County Commissioners on March 24, 1966. Sanchez, a young boy enrolled in CAP's day care program, was repeatedly molested between 1979 and 1982 by Wilfredo Montanez, an employee of CAP who was later convicted of the crimes. Sanchez alleges that the molestations occurred at Montanez's home and on the day care premises.[2]

---

[1] These motions were made after CAP became aware of a decision by another Lancaster County Court of Common Pleas judge in another case that CAP was a local agency subject to governmental immunity. *See Stuart v. Lawrence* (No. 1454–1990, filed May 8, 1992).

[2] In Count I of Sanchez's second amended complaint, upon which the trial court entered partial summary judgment as to CAP only on October 29, 1992, Sanchez sues Montanez and CAP jointly and severally for the assaults and batteries he sustained at Montanez's hands. In Count II, Sanchez sues CAP for negligence "in the hiring, the continued employment, and the supervision of Montanez...." By order dated

■ The first issue Sanchez raises here is whether the trial court erred in granting summary judgment on the grounds that CAP is immune from suit under Section 8541 of the Judicial Code, 42 Pa.C.S. § 8541 because it is a county local agency.[3] Section 8541 provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." Section 8542, 42 Pa.C.S. § 8542 provides exceptions to that general provision.

Sanchez maintains that CAP is not immune from suit as a county local agency, but that "it looks like [what] it is: a nonprofit corporation whose day-to-day supervision is outside the preview [sic] of the federal, state, and local government, which is subject to hybrid government funding and regulation." (Appellant's brief, p. 19.) Sanchez asserts that, therefore, CAP is ruled by Section 5502(a)(2) of the Nonprofit Corporation Law of 1988 (Nonprofit Corporation Law), 15 Pa.C.S. § 5502(a)(2), which provides:

### § 5502. General powers.

(a) **General rule.**—Subject to the limitations and restrictions imposed by statute and, except as otherwise provided in paragraph (4), subject to the limitations and restrictions

October 22, 1993, the trial court allowed CAP to amend its new matter to assert a governmental immunity defense and granted it summary judgment. It then dismissed Sanchez's second amended complaint as to CAP.

3. Our scope of review on appeal from a grant of a motion for summary judgment is limited to a determination of whether there is an error of law or manifest abuse of discretion. *Mullen v. Borough of Parkesburg*, 132 Pa.Commonwealth Ct. 321, 323, 572 A.2d 859, 860 (1990). Pursuant to Pa.R.C.P. No. 1035, summary judgment may be granted when the moving party is entitled to judgment as a matter of law and when there is no genuine issue of material fact. Such judgment should be granted only where the right is clear and free from doubt. In making this determination the trial court must examine the record in the light most favorable to the non-moving party. *Mullen*, 132 Pa.Commonwealth Ct. at 324, 572 A.2d at 860–861.

*Peterson v. Philadelphia Housing Authority*, 154 Pa.Commonwealth Ct. 309, 311, 623 A.2d 904, 905 (1993).

contained in its articles, *every nonprofit corporation shall have power:*

. . . . .

(2) *To sue and be sued, complain and defend and partici-pate as a party or otherwise in any judicial, administra-tive, arbitrative or other proceeding in its corporate name.*

15 Pa.C.S. § 5502(a)(2). (Emphasis added.)

For its part, CAP counters that the language of the federal statute under which it was established, the Economic Opportu-nity Act of 1964 (Economic Opportunity Act),[4] tends to prove that the federal government regarded government units and private, nonprofit corporations such as CAP as comparable. CAP argues that, because it is an agency of the county, which is a political subdivision, it is a local agency and therefore immune from suit. CAP further maintains that there is no logical reason to distinguish it from the county, as evidenced by the fact that the county could have designated itself the official community action program had it chosen to do so.

According to Sanchez, Title II of the Economic Opportunity Act did not envision CAP as a governmental unit entitled to immunity. (*See United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) for the proposition that community action programs are not federal *agencies,* but local *enterprises.*) Moreover, CAP's enabling state legislation, the Community Services Act,[5] passed in 1986, did not bestow immunity on CAP any more than did the appropriating Omni-bus Budget Reconciliation Act of 1981 (Omnibus Budget Rec-onciliation Act),[6] or the Lancaster County Commissioners' resolution designating CAP the official community action pro-gram for the county. Sanchez further argues that, even if the

---

**4.** 42 U.S.C.A. § 2701 *et seq.* (West 1973) (Repealed 1981 except for titles VIII and X).

**5.** Act of July 10, 1986, P.L. 1263, *as amended,* 62 P.S. §§ 2981–2991.

**6.** 42 U.S.C.A. § 9901 *et seq.* (West 1983 & Supp.1994).

Sanchez states that "[a]pplicable to community action agencies, the [Omnibus Budget Reconciliation Act] for the first time directed federal funds to be 'passed through' the state's hands to community action agencies." (Appellant's brief, p. 13.)

Community Services Act and the Omnibus Reconciliation Act altered CAP's status, making it a local agency immune from suit, both acts were passed after the molestations occurred and are not applicable.

Our preliminary inquiry must be, as Sanchez suggests, whether CAP is indeed a local agency. In Section 8501 of the Judicial Code, 42 Pa.C.S. § 8501, "local agency" is defined as "[a] *government unit* other than the Commonwealth government. The term includes an intermediate unit." (Emphasis added.) Section 102 of the Judicial Code, 42 Pa.C.S. § 102 defines "government unit" as "[t]he General Assembly and its officers and agencies, any *government agency* or any court or other officer or agency of the unified judicial system." (Emphasis added.) It defines "government agency" as "[a]ny Commonwealth agency or any political subdivision or *municipal or other local authority,* or any officer or agency of any such political subdivision or local authority." (Emphasis added.)

Sanchez argues that CAP is not a local agency, nor is it an agency of the federal or state governments, because, in its hybrid fashion, it operates independent of all echelons of government, making its own determinations how to best benefit Lancaster County's more impoverished residents. At first blush, it is difficult to appreciate Sanchez's reasoning. Section 2790(a) of the Economic Opportunity Act afforded in pertinent part:

§ **2790. Designation of community action agencies— Political subdivisions; public and private nonprofit agencies and organizations**

(a) *A community action agency shall be a State or political subdivision of a State* (having elected or duly appointed governing officials), or a combination of such political subdivisions, *or a public or private nonprofit agency or organization which has been designated by a State or such a political subdivision* . . .

42 U.S.C.A. § 2790(a). (Emphasis added.)

Moreover, this Commonwealth's Economic Opportunity

Act [7] provides:

### § 2801. Community action agencies; grants

*Community action agencies recognized under the Economic Opportunity Act of 1964,* as amended, which coordinate economic opportunity programs for cities, boroughs, towns, townships and counties within the Commonwealth of Pennsylvania, *may receive grants through the Department of Community Affairs not to exceed ten per cent of the total cost of the community action program.*

62 P.S. § 2801. (Footnote omitted.) (Emphasis added.)

### § 2802. Administration of program; rules and regulations; contracts

*The Department of Community Affairs shall administer this program and may provide rules and regulations necessary to administer the grants* ...

62 Pa.C.S. § 2802. (Emphasis added.)

These provisions seem to contravene Sanchez's assertion that CAP is not a governmental unit because, pursuant to the federal Economic Opportunity Act, CAP is clearly a private, nonprofit agency designated by a *political subdivision* and because, quoting the trial judge,

[t]he Department of Community Affairs has promulgated regulations to govern the activities of *local agencies* which operate federally-funded community action programs.5

5   16 Pa.Code § 13.1 *et seq.*

(Trial court opinion, p. 6.) (Emphasis added.) Nonetheless, a deeper examination of these facts reveals that they are merely indicative—not dispositive—of the issue of whether CAP is a public body.

First, the fact that the county designated CAP as its official community action program does not automatically place it within the definition of a "government unit" as set forth in 42 Pa.C.S. § 102. It would of course be a stretch to say that, because local officials designated a private, nonprofit corporation to receive federal money for disbursement to financially

7. Act of January 26, 1968, P.L. ——, 62 P.S. §§ 2801–2802.

disadvantaged county residents, it somehow necessarily became a government agency or a municipal or local authority.

Second, the fact that the Department of Community Affairs may award grants to community action agencies and may make rules and regulations pursuant to the administration of those grants does not confer "government unit" status upon CAP. As the U.S. Supreme Court said in *United States v. Orleans* when confronted with the issue of "whether a community action agency funded under the Economic Opportunity Act of 1964 is a *federal* instrumentality or agency for purposes of Federal Tort Claims Act liability[,]" *id.* at 809, 96 S.Ct. at 1971, "the question here is not whether the community action agency receives federal money and must comply with federal standards and regulations, but whether its *day-to-day operations* are supervised by the Federal Government." *Id.* at 815, 96 S.Ct. at 1976 (Emphasis added.) (Footnote omitted.)

On the question of CAP's status as a local agency, we also look for guidance to the testimony of MacDonald Stacks, CAP's executive director, who explained that it only receives "about 20 percent" of its funds from Lancaster County (Notes of Testimony, Deposition of MacDonald Stacks, beginning July 11, 1991, p. 11).[8] More important, though, is the fact that two-thirds of the members of CAP's board are nonpublic officials.[9] This figure makes it clear that the nonpublic officials on CAP's board can easily vote to override the will of its public officials. Additionally, we agree with Sanchez that CAP has not offered sufficient evidence showing that the county oversees its operations on a quotidian basis.

As well, there is very recent Pennsylvania precedent which speaks to our determination in this case. This Court's decision in *Modern Shoppers World v. Philadelphia Gas Works*, 164 Pa.Commonwealth Ct. 257, 643 A.2d 136 (1994) gives credence to Sanchez's argument that CAP's status as a private, nonprofit corporation places it under the auspices of the

8. *See* 42 U.S.C.A. § 2812(c).
9. *See* 42 U.S.C.A. § 2791.

Nonprofit Corporation Law, and compels the conclusion that, unlike a local agency, it can be sued.

In *Modern Shoppers World*, this Court held that the Philadelphia Facilities and Management Corporation (PFMC), which was the exclusive operator of the Philadelphia Gas Works, was not a local agency immune from suit and protected from subrogation under Section 8553(d) of the Judicial Code, 42 Pa.C.S. § 8553(d), due to its status as a private, nonprofit corporation. We decided that this was the case even though the City of Philadelphia organized PFMC, and restrictions were placed on PFMC's function by its management contract with the City. We stated:

> As the trial court acknowledged, PFMC is a nonprofit corporation organized by the [City] for the sole purpose of operating PGW. Notes of Testimony, March 2, 1993 (N.T.), at 24–25; R.R. at 344a–345a. Specifically, the trial court found *inter alia*, that PFMC personnel are hired subject to the approval of the City's Gas Commission and PFMC's legal matters are handled by the City Solicitor. *Id.* PFMC's three directors are appointed by the Mayor. *Id.* Further, the City is obligated to indemnify PFMC's directors, officers and employees for any liabilities, claims, or actions against them while acting within the scope of their employment. *Id.* Also, PFMC's sole source of income is the management fee provided in the City's 1972 Ordinance. Consequently, the trial court found PFMC to be a local government agency . . .
>
>        .        .        .        .        .
>
> For purposes of tort immunity, an "agency of a local government" is one that has no independent legal existence, but is merely part of the organizational structure of that local government or authority. 42 Pa.C.S. § 102. *Hough v. Commonwealth, Department of Transportation,* 155 Pa.Commonwealth Ct. 162, 624 A.2d 780 (1993); *City of Philadelphia v. Glim,* 149 Pa.Commonwealth Ct. 491, 613 A.2d 613 (1992). Being part of a local government's internal organization, an agency is subject to the same governmental restrictions governing the local government of which it is

part. *No matter how much the functions of PFMC and the City are interwoven, who formed PFMC, who appoints its directors, and no matter how much control is exercised by the City under the 1972 agreement, PFMC is not an agency of the City—it is a "private nonprofit corporation." [Philadelphia Facilities Management Corporation v. Biester, 60 Pa.Commonwealth Ct. 366, 377, 431 A.2d 1123, 1129 (1981) ]; [Dawes v. Philadelphia Gas Commission, 421 F.Supp. 806 (E.D.Pa.1976) ]. Its operations are governed by the Nonprofit Corporation Law of 1988, 15 Pa.C.S. §§ 5101–6162, not the City's Home Rule Charter or its general ordinances or, for that matter, laws of the Commonwealth dealing with local government affairs. Accordingly, we hold that PFMC is not entitled to assert a defense of governmental immunity* and may not avail itself of the protection from subrogation claims provided by 42 Pa.C.S. § 8553(d).

*Id.*, 164 Pa.Cmwlth. at 258, 260–261, 643 A.2d at 137, 138–139. (Emphasis added.)

Similarly, we hold today that CAP, a private, nonprofit corporation subject to a variety of governmental regulation and funding, is nonetheless not a local agency entitled to governmental immunity, but a corporate entity capable of being sued.[10]

█ Last, Sanchez argues that the trial court erred as a matter of law in deciding that CAP could not be held vicariously liable for Montanez's actions. Because we have deter-

---

**10.** *Cf. Weinerman v. City of Philadelphia*, 785 F.Supp. 1174 (E.D.Pa. 1992) and *Urbanic v. Rosenfeld*, 150 Pa.Commonwealth Ct. 468, 616 A.2d 46 (1992), both of which CAP cited for the proposition that a private, nonprofit corporation can be a local agency and, therefore, immune from suit. In *Weinerman*, the U.S. District Court (E.D.Pa.) held in part that the Philadelphia Housing Development Corporation, a nonprofit corporation, was a local agency immune from suit under the Political Subdivision Tort Claims Act. In *Urbanic*, we noted the well settled law *treating* volunteer fire companies, which are private, nonprofit corporations, "as 'local agencies' entitled to tort immunity[,]" *id.* at 481, n. 4, 616 A.2d at 53, n. 4, since their firefighting activities are "traditionally the exclusive prerogative of the State." *Id.* at 481, 616 A.2d at 53.

mined that CAP is not a local agency, we must consider this question.

In *Plavi v. Nemacolin Volunteer Fire Company,* 151 Pa.Commonwealth Ct. 587, 589, 618 A.2d 1054, 1055 (1992), we quoted from case law which squarely addresses this issue:

> Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another, it is not unexpected by the employer.
>
> *Natt v. Labar,* 117 Pa.Commonwealth Ct. 207, 213–214, 543 A.2d 223, 225 (1988).
>
> Where, however, the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law. If an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment.
>
> [*Fitzgerald v. McCutcheon,* 270 Pa.Superior Ct. 102, 106, 410 A.2d 1270, 1272 (1979).]

Sanchez acknowledges in his brief that asking us to reverse the trial judge's entry of summary judgment on the issue of respondeat superior is tantamount to "asking the Court to break new ground." (Appellant's brief, p. 44.) There can be no doubt that Montanez's actions were conducted for personal reasons only and were utterly outrageous in manner. Although we certainly commiserate with Sanchez's plight, we are obliged to follow and not reject the deeply entrenched law on this subject.

Accordingly, the order of the trial court entering summary judgment on the issue of CAP's governmental immunity is reversed; the order of the trial court entering partial sum-

mary judgment on the issue of CAP's vicarious liability is affirmed.[11]

## ORDER

AND NOW, this 27th day of June, 1994, the order of the Court of Common Pleas of Lancaster County, dated October 29, 1992, at No. 644–1988, granting CAP's motion for partial summary judgment on the issue of its vicarious liability, alleged in Count I of the second amended complaint, is affirmed. The order of the Court of Common Pleas of Lancaster County, dated October 22, 1993, at No. 644–1988, granting CAP's motion for summary judgment on the issue of its governmental immunity and dismissing the second amended complaint as to CAP is reversed.

Jurisdiction Relinquished.

---

11. Sanchez also raises the question of whether the trial court erred as a matter of law in entering summary judgment on the issue of governmental immunity, given our Supreme Court's holding in *Nanty–Glo Boro. v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932). We need not reach this issue, however, because we have determined that CAP is not a local agency entitled to governmental immunity.