IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jimi Rose,                              :
                    Appellant          :
                                       :
        v.                             :   No. 738 C.D. 2021
                                       :   Submitted: January 21, 2022
David Piperato, Superintendent;        :
Easton Area School Board;              :
Easton Area School District;           :
and Carl Peterson, Deceased            :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                                    FILED: April 21, 2022

Jimi Rose appeals, *pro se*, from the January 14, 2021 Order of the Court of Common Pleas of Northampton County (Trial Court), which sustained the Preliminary Objections filed by David Piperato, Superintendent, Easton Area School Board, Easton Area School District, and Carl Peterson, Deceased (collectively, School District), to Mr. Rose's "Petition for High School Diploma Which the Petitioner was Wrongfully Deprived Of By the Aforementioned Respondents" (Petition) and dismissed the Petition with prejudice. Because we agree with the Trial Court that Mr. Rose's Petition is time-barred, we affirm.

## Background

On July 16, 2020, Mr. Rose filed his *pro se* Petition in the Trial Court, alleging that the late Carl Peterson, then-Principal of Easton Area High School, wrongfully prevented Mr. Rose from receiving his high school diploma in 1961. The Trial Court summarized the facts averred in the Petition as follows:

The underlying facts of [Mr. Rose's] lawsuit involve him allegedly being deprived of a diploma from Easton Area High School in 1961. According to the [Petition], [Mr. Rose] was a student there when he was called out of class one day to go to . . . [Mr.] Peterson's office, where his mother was waiting. At that time, [Mr.] Peterson was the principal of the school. In his [Petition], [Mr. Rose] acknowledges that [Mr.] Peterson is now deceased. [Mr. Rose] alleges that [Mr.] Peterson suggested to [Mr. Rose's] mother that she withdraw him from school, which she then did. [Mr. Rose] repeatedly asserts that he was removed from school for making people laugh. [Mr. Rose], who is an African American, believes that he was asked to leave school because of his race and in violation of his civil and due process rights. After those facts are alleged, [the Petition] devolves into a retelling of [Mr. Rose's] life story, including various incidents that happened before and after he left high school. From what relevant details can be gleaned from the [Petition], [Mr. Rose] was arrested for the first time a few months after leaving school. He then spent years in trouble with the law and in and out of prison. [Mr. Rose] believes that if he would have received his high school diploma, his life would have turned out differently. . . .

Trial Ct. Op., 1/14/21, at 2-3.[1]

With regard to his legal claims, Mr. Rose averred as follows:

Even though this [c]ase is not a [f]ederal [c]ase as of yet, [Mr. Rose] maintains that at all times relevant his [c]ivil [r]ights and [l]iberties were taken away from him by the late High School Principal Carl Peterson.

. . . .

[Mr. Rose] was the victim of w[a]nton, willful, intentional and deliberate [c]ivil [r]ights [v]iolations which occurred in the County of Northampton, Pennsylvania at the instructions [sic] of the late Carl Peterson, Principal of the Easton Area High School in the year 1961.

---

[1] The factual averments in Mr. Rose's Petition comprise 140 numbered paragraphs.

These [c]ivil [r]ights [v]iolations occurred and were wrongfully inflicted upon [Mr. Rose] without one single iota of a [r]ight to have a [h]earing []or the [r]ight to be [h]eard []or the [r]ight to [c]onsult [c]ounsel in the [c]ourse of being stripped of his [r]ights to have an [e]ducation which is guaranteed to every American citizen under the Bill of Rights and the 14th Amendment of the United States Constitution.

Pet. at 1 (paragraph numbers omitted). Mr. Rose requested the following relief:

**Wherefore,** [Mr. Rose] seeks $20,000 for every year he was held out of school from then until now and, he seeks $50,000 in punitive damages for every year he [w]as [d]enied a [h]igh [s]chool [d]iploma. The alternative is for [Easton Area High] School to give [Mr. Rose] a [h]igh [s]chool [d]iploma, which would allow [him] to go seek [c]ollege [c]ourses and to restore [him] and make him whole.

*Id.* at 22 (bold in original).

On September 8, 2020, School District filed Preliminary Objections to the Petition, seeking dismissal under Pa.R.Civ.P. 1028(a)(4) for legal insufficiency. School District asserted that Mr. Rose's civil rights claims were barred by the two-year statute of limitations, because he did not file his Petition until 59 years after he was allegedly forced to withdraw from high school.[2]

On January 14, 2021, after briefing by the parties, the Trial Court issued an Opinion and Order sustaining School District's Preliminary Objections and dismissing the Petition with prejudice. The Trial Court determined that Mr. Rose's right to challenge his removal from high school on civil rights grounds began to run in 1961, so the two-year statute of limitations expired in 1963. Trial Ct. Op., 1/14/21,

---

[2] "Although the statute of limitations is to be pled as new matter, it may be raised in preliminary objections where the defense is clear on the face of the pleadings and the responding party does not file preliminary objections to the preliminary objections." *Petsinger v. Dep't of Lab. & Indus., Off. of Vocational Rehab.*, 988 A.2d 748, 758 (Pa. Cmwlth. 2010). Here, the Trial Court concluded that the statute of limitations defense was clear on the face of the Petition, and Mr. Rose did not file preliminary objections to School District's Preliminary Objections.

at 5. The Trial Court also found that Mr. Rose did not articulate any legitimate reason for his 59-year delay in filing suit. *Id.* While Mr. Rose claimed that he did not discover who was responsible for his removal from high school until May 2018, the Trial Court found that his claim was belied by the averments in the Petition, because Mr. Rose alleged that he was present when Mr. Peterson asked his mother to withdraw him from school. *Id.* In any event, even assuming that Mr. Rose did not learn of Mr. Peterson's identity until May 2018, the Trial Court concluded that the Petition was still time-barred, because Mr. Rose filed it more than two years later, on July 16, 2020. *Id.* Mr. Rose now appeals to this Court.[3]

### Analysis

On appeal, Mr. Rose first asserts that the Trial Court erred in *sua sponte* "changing" his Petition to a complaint "without first consulting with [Mr. Rose] and getting [his] approval." Rose Brief at 1; *see id.* at 2 (asserting that "nowhere in the United States has a [j]udge, *sua sponte*, taken a [p]etition and converted it into a [c]ivil [r]ights [c]omplaint"). In essence, Mr. Rose argues that because he titled his filing a "Petition," rather than a "Complaint," the statute of limitations does not bar his claims for relief. We disagree.

This Court has defined a "petition" as "a written application made to a court, or addressed to some governmental authority *ex parte*, praying for the exercise of some action laid before it, or seeking the grant of a privilege, or license." *Koken v. Reliance Ins. Co.*, 841 A.2d 588, 591 (Pa. Cmwlth. 2003), *rev'd on other grounds*,

---

[3] When the Trial Court dismisses a complaint on preliminary objections, our appellate review is limited to determining whether the Trial Court committed an error of law or an abuse of discretion. *Laskaris v. Hice*, 247 A.3d 87, 89 n.5 (Pa. Cmwlth. 2021). In considering preliminary objections, the court must accept as true all well-pled material facts and all reasonable inferences deducible therefrom. *Id.* A preliminary objection should be sustained only when it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief. *Id.*

4

893 A.2d 70 (Pa. 2006); *see* Pa.R.Civ.P. 206.1 (stating that a "petition" is "an application to strike and/or open a default judgment or a judgment of *non pros*" and "any other application which is designated by local rule [of court]"). A "complaint," on the other hand, "is the pleading that initiates an action and sets forth a claim for relief." *Koken*, 841 A.2d at 591; *see* Pa.R.Civ.P. 1007 (stating that an action may be commenced by filing with the prothonotary either a praecipe for a writ of summons or a complaint); *see also Hartmann v. Peterson*, 265 A.2d 127, 128 (Pa. 1970) ("Nowhere do the [R]ules [of Civil Procedure] provide for commencing an action by a petition.").

In determining whether to treat a nonconforming filing as a complaint, we must consider whether the filing bears the form and substance of a complaint. For example, in *In re Montgomery*, 445 A.2d 873, 873-74 (Pa. Cmwlth. 1982), the solicitor for the county prothonotary filed a document titled "Petition for Counsel Fees" in the trial court, requesting an award of "reasonable counsel fees" for representing the prothonotary during the prior year. The trial court granted the petition, and the county appealed. *Id.* at 874. On appeal, this Court reversed, stating:

> First, the *gravamen of [the] petition* was that [the petitioner] was entitled to compensation for services—a claim properly pursued in an action at law against the county. As such it would be governed by [Pa.R.Civ.P.] 1007 requiring actions at law to be brought by praecipe for a writ of summons or a complaint or an agreement for an amicable action. *A petition for an order is not a praecipe, complaint or agreement* and the petition in this case should have been dismissed. *We do not think that the invocation of this rule in this case is an act of exalting form over substance . . . because the petition in this case had none of the ingredients of a complaint and no response in the form of an answer or other adversarial pleading was invited or made*.

*Id.* (emphasis added).

5

Here, unlike the petition for counsel fees in *Montgomery*, Mr. Rose's Petition bore the hallmarks of a complaint in an action at law. First, the Petition included a Notice to Defend. *See* Pa.R.Civ.P. 1018.1 (requiring that "[e]very complaint filed by a plaintiff . . . shall begin with a notice to defend"). Second, the averments in the Petition demonstrated Mr. Rose's intent to initiate a cause of action against School District for the violation of his civil and due process rights. *See* Pet. at 1, 22. Third, the Petition included a request for damages in the amount of "$20,000 for every year [Mr. Rose] was held out of school" and "$50,000 in punitive damages for every year he [w]as [d]enied a [h]igh [s]chool [d]iploma." *Id.* at 22. Under these circumstances, we conclude that the Petition, though improperly labeled, was effectively a complaint initiating a cause of action against School District. *See Koken*, 841 A.2d at 591 (recognizing that a "complaint is the pleading that initiates an action and sets forth a claim for relief"). In fact, in his Response to School District's Preliminary Objections, Mr. Rose *repeatedly* referred to his Petition as a "Complaint." *See* Resp. to Prelim. Objs. ¶¶ 2, 12, 14, 15, 19, 21, & 24. Therefore, we conclude that the Trial Court properly treated Mr. Rose's mis-styled "Petition" as a complaint. *See* Trial Ct. Op., 1/14/21, at 1 n.1; Trial Ct. Pa.R.A.P. 1925(a) Stmt., 3/9/21, at 2.

Next, Mr. Rose asserts that the Trial Court erred in dismissing the Petition as untimely because the two-year statute of limitations for a civil rights claim under 42 U.S.C. § 1983 (Section 1983) did not apply to his Petition. Rather, he baldly asserts that "there is no [s]tatute of [l]imitations on the [r]ight to have a diploma." Rose Br. at 6.

Section 1983 allows a private citizen to challenge conduct by a state official who has allegedly deprived him of his constitutional rights. Section 1983 provides:

6

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but merely serves as a vehicle or . . . 'device' by which a citizen is able to challenge conduct by a state official whom he claims has deprived or will deprive him of his civil rights." *Urbanic v. Rosenfeld*, 616 A.2d 46, 52 (Pa. Cmwlth. 1992), *aff'd*, 631 A.2d 596 (Pa. 1993). With regard to the pleading requirements for Section 1983 claims, our Court has explained:

> Although a *plaintiff is not required to set forth the statute by stating a "Section 1983" cause of action in his complaint*, to maintain such an action, *a plaintiff is required to allege first that a person or persons deprived him of some cognizable federal right, privilege or immunity, and second, that the person or persons deprived him of that right while acting under color of state law*.

*Clark v. Se. Pa. Transp. Auth.*, 691 A.2d 988, 990-91 (Pa. Cmwlth. 1997) (emphasis added).

Based on the averments in the Petition, we conclude that, even though Mr. Rose did not specifically reference Section 1983, the gravamen of his Petition was a Section 1983 civil rights cause of action. Mr. Rose averred that he "was the victim of w[a]nton, willful, intentional and deliberate *[c]ivil [r]ights [v]iolations* which occurred in the County of Northampton, Pennsylvania at the instructions [sic] of the late Carl Peterson, Principal of the Easton Area High School in the year 1961." Pet. at 1 (emphasis added). He also averred that he "had his *[c]ivil [r]ights and [l]iberties [d]enied to him by a [s]chool [p]rincipal* who was at all times relevant

7

[a]cting [u]nder the County Charter and *[u]nder [c]olor of [s]tate [l]aw.*" *Id.* at 21-22 (emphasis added). These allegations fall squarely within the framework of a Section 1983 claim. *Cf. Clark*, 691 A.2d at 990-91; *Urbanic*, 616 A.2d at 52 ("To hold a person liable under Section 1983, a plaintiff must establish that the defendant was acting 'under color of law.'").

It is well settled, however, that civil rights claims under Section 1983 are subject to a two-year statute of limitations. *Burger v. Borough of Ingram*, 697 A.2d 1037, 1041 (Pa. Cmwlth. 1997); *see Fleming v. Rockwell*, 500 A.2d 517, 520 (Pa. Cmwlth. 1985) ("Even assuming [the a]ppellants could make out a sufficient cause of action under Section 1983, any such civil rights action [they] could have brought is . . . time-barred because, *in Pennsylvania, a two-year statute of limitations applies to civil rights actions brought under Section 1983*.") (emphasis added).

Here, the alleged civil rights violations occurred in 1961. Mr. Rose did not file his Petition until 2020, 59 years later. In response to School District's Preliminary Objections, Mr. Rose asserted that he did not discover the facts underlying his cause of action until May 2018. Br. in Support of Resp. to Prelim. Objs. ¶¶ 6-8; *see id.*, Ex. A.[4] However, the Trial Court correctly found that this claim was belied by the averments in the Petition, because Mr. Rose alleged that he was present in the room when Mr. Peterson asked his mother to withdraw him from school. *See* Pet. at 2. Even if Mr. Rose somehow did not discover Mr. Peterson's

---

[4] In his response to the Preliminary Objections, Mr. Rose asserted that he did not know Mr. Peterson's identity until he spoke with an attorney about the matter in October 2019. *See* Br. in Support of Resp. to Prelim. Objs. ¶ 2. However, Mr. Rose appended to his brief a letter that he sent to School District on May 30, 2018, wherein he specifically identified Mr. Peterson as the person who threw him out of school. *See id.*, Ex A.

identity until May 2018, as he claims, the Petition was still untimely, because Mr. Rose filed it more than two years later, on July 16, 2020.[5]

Furthermore, to the extent Mr. Rose's Petition alleges due process violations, those claims also fail. *See, e.g.*, Pet. at 2 (averring that Mr. Peterson deprived Mr. Rose of his civil rights "without . . . the [r]ight to have a [h]earing or the [r]ight to [p]rocess an [a]ppeal," thereby violating his "[d]ue [p]rocess [r]ights"); *id.* at 21-22 (referencing the due process clause). Our Court has explicitly declined to create a private cause of action for money damages based on a state constitutional violation. *See Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Cmwlth. 2006) (*en banc*) ("To date, neither Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution."); *see also R.H.S. v. Allegheny Cnty. Dep't of Hum. Servs., Off. of Mental Health*, 936 A.2d 1218, 1226 (Pa. Cmwlth. 2007) (holding that the plaintiff could not recover money damages for an alleged violation of her state constitutional rights). In his Petition, Mr. Rose sought damages in the amount of "$20,000 for every year [Mr. Rose] was held out of school" and "$50,000 in punitive damages for every year he [w]as [d]enied a [h]igh [s]chool [d]iploma." Pet. at 22. Consequently, we conclude that he failed to state a cognizable constitutional claim for money damages.[6]

---

[5] In his appellate brief, Mr. Rose admits that, had he filed a civil rights complaint in federal court, his complaint would have been time-barred, asserting that he "is very familiar with [f]ederal [l]aw and [he] would never file a [c]omplaint because[] he was taught by the Honorable Judge Legrome Davis of the United States District Court that any [c]ivil [r]ights [v]iolations must be brought within two years." Rose Br. at 16; *see also* Rose Reply Br. at 3 (asserting that if he had filed a Section 1983 complaint, his "argument would have been that the [s]tatute of [l]imitations was tolled until [he] knew that he was injured and that his injuries were proximately caused by [School District's] conduct").

[6] In his appellate brief, Mr. Rose asserts that he "simply want[s] an order directing the school officials to give [him] a [h]igh [s]chool diploma." Rose Br. at 9. However, in his Petition,
**(Footnote continued on next page…)**

9

**Conclusion**

We agree with the Trial Court that Mr. Rose's Petition was patently time-barred. While we certainly empathize with the struggles and challenges Mr. Rose has experienced throughout his life, as described in his Petition, he offers no plausible explanation as to why he waited 59 years to file this lawsuit. *See Neshaminy Sch. Dist. v. Pa. Hum. Rels. Comm'n*, 257 A.3d 766, 784 (Pa. Cmwlth. 2021) ("Statutes of limitations are intended to keep stale claims out of [the] courts."). Accordingly, we affirm the Trial Court's Order.

_____
ELLEN CEISLER, Judge

---

he specifically requested monetary damages and only requested the issuance of a diploma in "the alternative." Pet. at 22.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jimi Rose,                          :
          Appellant        :
                               :
         v.                   :   No. 738 C.D. 2021
                               :
David Piperato, Superintendent;  :
Easton Area School Board;      :
Easton Area School District;     :
and Carl Peterson, Deceased    :

# **O R D E R**

AND NOW, this 21st day of April, 2022, we hereby AFFIRM the January 14, 2021 Order of the Court of Common Pleas of Northampton County.

_____
ELLEN CEISLER, Judge