**Priscilla PEARSON, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 20, 1996.

Decided Feb. 12, 1997.

---

Debra A. Jensen, Philadelphia, for petitioner.

Sarah C. Yerger, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Before FRIEDMAN and KELLEY, JJ., and SILVESTRI, Senior Judge.

OPINION

FRIEDMAN, Judge.

Priscilla Pearson (Claimant) appeals from an order of the Unemployment Compensation Board of Review (UCBR) affirming a referee's decision which denied unemployment compensation benefits to Claimant pursuant to sections 1002(11) and 1201(b)(9) of the Unemployment Compensation Law (Law).[1] We reverse.

From November 1994 until December 31, 1995, Claimant served as the Vice President for Development Affairs at Cheyney University (Employer), a state university owned and operated by the Pennsylvania State System of Higher Education (SSHE). (UCBR's Findings of Fact, Nos. 2–3.) In that position, Claimant was responsible for the planning, development, management and administration of Employer's development program; her typical duties included,

---

1. Both sections 1002(11) and 1201(b)(9) of the Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* added by § 20 of the Act of September 27, 1971, P.L. 460, *as amended,* 43 P.S. §§ 892(11) and 911(b)(9), ex-clude from unemployment compensation individuals serving in positions which, under or pursuant to the laws of this Commonwealth, are designated as major nontenured policymaking or advisory positions.

among other things, planning and directing fundraising programs and events, marketing the university, participating in policy development and strategic planning as a member of the President's Counsel, supervising and directing the alumni division, providing legislative and governmental developmental efforts on behalf of the university and maintaining and implementing a publication program for all university publications. (UCBR's Finding of Fact, No. 2.)

At the time she was appointed to her position as Vice President for Development Affairs in November of 1994, Claimant was informed that her appointment was subject to the policies of the Board of Governors (Board) of SSHE. (UCBR's Finding of Fact, No. 4.) These terms and policies, which were incorporated by reference into Claimant's appointment letter, include policy 1984–14–A, entitled "Terms and Conditions of Employment of Senior Policy Executives." (UCBR's Finding of Fact, No. 5.) Part B of policy 1984–14–A provides that a Vice President, such as Claimant, serves as an appointee at the pleasure of the respective President under fixed terms or contracts of fixed duration up to three years. Specifically, section B(5)(c) provides that there is no tenure, seniority or merit service time for a Vice President. Moreover, section B(5)(f) provides that "[i]n accordance with the Commonwealth's Unemployment Compensation Law, Vice Presidential positions are exempt from Unemployment Compensation; therefor, a Vice President neither contributes to, nor can receive from, the fund." (UCBR's Finding of Fact, No. 6.)

From November 28, 1994 to May 7, 1995, Claimant performed her policymaking and advisory duties as Vice President for Development Affairs. (UCBR's Finding of Fact, No. 8.) However, from May 8, 1995 to De-

cember 31, 1995, after a new acting interim president had been appointed, Claimant was no longer permitted to perform her policymaking and advisory duties. (UCBR's Finding of Fact, No. 9.) On December 31, 1995, after Claimant's contract expired, Employer terminated Claimant as Vice President for Development Affairs. (UCBR's Finding of Fact, No. 10.)

Following her termination, Claimant applied for unemployment compensation benefits at the local job center, which denied Claimant benefits. Claimant appealed from the job center's denial of benefits,[2] and a hearing was held before a referee. After the hearing, at which both parties presented evidence, the referee issued a decision affirming the job center's denial of benefits to Claimant.

■ Claimant appealed to the UCBR, and the UCBR affirmed. Finding that Employer designated Claimant as a senior policy executive pursuant to policy 1984–14–A, (UCBR's Finding of Fact, No. 11), and that Claimant understood when she was appointed that her position as Vice President for Development Affairs was a major nontenured policymaking or advisory position, (UCBR's Finding of Fact, No. 7), the UCBR concluded that Claimant's employment as Vice President was excluded under both section 1002(11) and section 1201(b)(9) of the Law, 43 P.S. § 892(11) and 43 P.S. § 911(b)(9), and, therefore, could not be included in calculating Claimant's financial eligibility for compensation. Accordingly, the UCBR affirmed the referee's denial of benefits to Claimant. It is from the UCBR's order that Claimant now appeals.[3]

On appeal, Claimant concedes that she held a nontenured policymaking or advisory position with Employer, but she maintains

---

**2.** According to a Notice of Financial Determination, dated January 26, 1996, Claimant was not financially eligible for benefits because she did not have sufficient qualifying wages during the base year period of October 1, 1994 to September 30, 1995. (UCBR's Finding of Fact, No. 1; UCBR's op. at 2.) On appeal, Claimant argued that the wages she had earned from her employment as Vice President for Development Affairs should have been included in her base year wages.

**3.** Our scope of review on appeal is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or whether the UCBR's necessary findings of fact are supported by substantial evidence. *Lacomis v. Unemployment Compensation Board of Review,* 105 Pa.Cmwlth. 631, 525 A.2d 442 (1987).

that she nevertheless remains eligible for benefits under the Law. Claimant reasons that 43 P.S. § 911 targets employees of Commonwealth *instrumentalities* and political subdivisions, while 43 P.S. § 892 focuses on employees of Commonwealth departments, bureaus, boards, *agencies,* commissions and authorities. Claimant argues that, because Employer is an "agency," rather than an "instrumentality," of the Commonwealth, Claimant's employment must be examined solely in the context of 43 P.S. § 892. Claimant then notes that, while 43 P.S. § 892 generally excludes employees in nontenured policymaking or advisory positions from coverage, the section contains an exemption for employees of an "institution of higher education," such as Employer here. Thus, Claimant contends that she remains eligible for benefits because 43 P.S. § 892 expressly exempts her from the "policymaker" exclusions set out in 43 P.S. § 892 and 43 P.S. § 911.

The UCBR, on the other hand, argues that Employer is an "instrumentality" of the Commonwealth, and, therefore, that Claimant's employment must be examined solely in the context of 43 P.S. § 911. Because 43 P.S. § 911, unlike 43 P.S. § 892, does not exempt employees of an "institution of higher education" from the "policymaker" exclusions, the UCBR contends that Claimant is excluded from unemployment compensation because her prior position with Employer was designated as a major nontenured policymaking or advisory position. We decline to accept as controlling either the "agency" label that Claimant attaches to Employer or the "instrumentality" label urged by the UCBR. However, for the following reasons, we conclude that Claimant is eligible for benefits under 43 P.S. § 892.

Section 1001 of the Law, 43 P.S. § 891, contained within Article X, which is entitled "Benefits to Employes of the Commonwealth," provides, in relevant part, as follows:

§ 891. **State employes**

[T]he Commonwealth of Pennsylvania and all its departments, bureaus, boards, agencies, commissions and authorities shall be deemed to be an employer and services performed in the employ of the Common-

wealth and all its departments, bureaus, boards, agencies, commissions and authorities shall be deemed to constitute State employment subject to this act with the exceptions hereinafter set forth in section 1002.

43 P.S. § 892(11), also contained within Article X, provides as follows:

§ 892. **Services excluded from "employment"**

Except for services performed in the employ of a[n] ... institution of higher education not otherwise excluded in this act, for the purposes of this article the term "employment" shall not include services performed by:

. . . .

(11) Individuals serving in positions which, under or pursuant to the laws of this Commonwealth, are designated as (i) a major nontenured policymaking or advisory position; . . . .

Reading these two sections together, *all* services performed in the employ of the Commonwealth and its departments, bureaus, boards, agencies, commissions and authorities are deemed to constitute employment subject to the Law *except* for services performed by individuals serving in major nontenured policymaking or advisory positions *unless* those services are performed in the employ of an institution of higher education not otherwise excluded in another section of the Law. In other words, even if an individual serves in a major nontenured policymaking or advisory position, that individual remains entitled to unemployment compensation benefits under 43 P.S. § 892 if he or she performs services, not otherwise excluded in another section of the Law, for an institution of higher education.

On the other hand, 43 P.S. § 911, contained within Article XII, which is entitled "Employes of Political Subdivisions," provides, in relevant part, as follows:

§ 911. **Political subdivision employes**

(a) Service performed ... in the employ of any of the instrumentalities or any political subdivision of this Commonwealth or any of its instrumentalities ... shall be deemed to constitute employment subject

to this act with the exceptions hereinafter set forth in section 1201(b).

. . . .

(b)(9) Individuals serving in positions which, under or pursuant to the laws of this Commonwealth, are designated as (i) a major nontenured policymaking or advisory position. . . .

According to this section, *all* services performed in the employ of any of the instrumentalities or political subdivisions of this Commonwealth, or in the employ of any of the political subdivisions' instrumentalities, are deemed to constitute employment subject to the Law *except* for services performed by individuals serving in major nontenured policymaking or advisory positions. Thus, although both 43 P.S. § 892(11) and § 911(b)(9) exclude from unemployment compensation individuals serving in positions which, under or pursuant to the laws of this Commonwealth, are designated as major nontenured policymaking or advisory positions, only 43 P.S. § 892(11) exempts an individual performing services at an "institution of higher education" from this policymaking exclusion. Because Claimant previously performed services at an "institution of higher education," it becomes important to determine which of the two relevant provisions of the Law controls the determination of Claimant's eligibility for unemployment compensation.

■ Both parties here rely on the distinction which the Law appears to draw between Commonwealth "agencies," on the one hand, and Commonwealth "instrumentalities," on the other. Although we agree that, in the context of employees of institutions of higher education, the language of 43 P.S. § 911 appears to treat employees of Commonwealth instrumentalities differently than employees of Commonwealth agencies for unemployment compensation purposes, we are not convinced that the legislature intended such a result; nevertheless, where the words of a statute are clear and free from ambiguity, we may not disregard the letter of the statute under the pretext of pursuing its spirit. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921. We recognize, therefore, that it is for the legislature to remedy any possible inconsistency or confusion that may have arisen from the drafting of 43 P.S. § 892 and § 911.

Indeed, this confusion is underscored by an Official Opinion of the Attorney General from 1972 which addressed the exact issue we currently face, but with respect to employees of the Pennsylvania State University (Penn State). The Opinion, Number 132, discussed whether employees of Penn State may be considered "state employees" within the meaning of 43 P.S. § 891 and § 892. Noting that Penn State "is an *instrumentality* of the state in much the same way as those entities known as state 'authorities,' as opposed to a private state-aided institution— like Temple and Pittsburgh Universities," (1972 Op. Atty. Gen. No. 132 at 95 (emphasis added)), the Attorney General's Office concluded that employees of Penn State are, in fact, state employees within the meaning of 43 P.S. § 891 and § 892.[4] Thus, even though the Opinion labeled Penn State an "instrumentality," it concluded that Penn State employees were Commonwealth employees within the meaning of 43 P.S. § 891 and § 892, rather than 43 P.S. § 911.

That being said, after carefully searching the relevant caselaw, we have found no authority which specifically addresses Employer's status under the Law for purposes of awarding unemployment compensation to its employees. However, we find Opinion Number 132 instructive in resolving the issue of first impression presented here in that it exemplifies the inherent difficulty with categorizing an Employer for unemployment compensation purposes solely on the basis of a label.[5] Therefore, in determining which of

---

**4.** Additional statutory authority for this conclusion is provided by section 5102 of the State Employees' Retirement Code (Retirement Code), 71 Pa.S. § 5102, which defines a "state employee" as including any officer or employee of the following:

(1). . . .

(iv) The Pennsylvania State University

. . . .

**5.** For instance, as in Official Opinion Number 132, we could label Employer an "instrumentality" while still finding that its employees are Commonwealth employees within the meaning of 43 P.S. § 892. Thus, we believe that the distinc-

the two relevant provisions of the Law controls Claimant's eligibility for benefits here, we will look beyond any label the law may assign Employer to the substance of Employer's role in the Commonwealth hierarchy.

 As noted, employees of Penn State are state employees within the meaning of 43 P.S. § 892; by implication, employees of private state-aided institutions like Temple and Pittsburgh Universities are *not* state employees within the meaning of that same section. We believe that Employer here, a wholly state-owned and operated institution of higher education, is more akin to Penn State than to Temple University, Pittsburgh University or any other private state-aided institution. Accordingly, we hold that Employer must be considered a Commonwealth employer for purposes of the Law, and, therefore, that its employees are state employees within the meaning of 43 P.S. § 892.[6]

 As previously noted, even if an individual serves in a major nontenured policy-making or advisory position, that individual is entitled to unemployment compensation benefits under 43 P.S. § 892 if he or she performs services, not otherwise excluded in another section of the Law, for an institution of higher education. Here, there is no dispute that Claimant previously served in a nontenured policymaking or advisory position at a state-owned and operated institution of higher education.[7] Therefore, irrespective of any label which may attach to that institution, Claimant remains entitled to unemployment compensation benefits pursuant to 43

P.S. § 892. Accordingly, we reverse the UCBR's order denying benefits to Claimant.

## ORDER

AND NOW, this 12th day of February, 1997, the order of the Unemployment Compensation Board of Review, dated May 22, 1996, is reversed.

SILVESTRI, Senior Judge, dissents.

---

tion between "agencies" and "instrumentalities," upon which both parties so heavily rely, is not determinative of the ultimate issue here.

6. Again, additional support for this proposition is found in 71 Pa.S. § 5102, which provides that, like employees of Penn State, any officer or employee of a state-owned educational institution is a state employee within the meaning of the Retirement Code.

Finally, we note that our conclusion is further reinforced by substantial authority recognizing that other state colleges and universities governed by SSHE, like Employer, are Commonwealth entities entitled to sovereign and Eleventh Amendment immunity. *See, e.g., Lewis v. Kelchner,* 658 F.Supp. 358 (M.D.Pa.1986); *Williams v. West Chester State College,* 29 Pa.Cmwlth. 240, 370 A.2d 774 (Pa.Cmwlth.1977); *Finkelstein v. Shippensburg State College,* 29 Pa.Cmwlth. 373,

370 A.2d 1259 (Pa.Cmwlth.1977). Although we recognize that many of these decisions labeled the various colleges and universities as "agencies" of the Commonwealth, we note that, for purposes of immunity, it was unimportant whether the entity was labeled an agency or an instrumentality. The result, in either case, was the same: the colleges or universities and their employees, respectively, were Commonwealth employers and employees entitled to immunity.

7. Moreover, the services performed by Claimant were not excluded by another section of the Law. *See, e.g.,* section 4(*l*)(4)(10)(B) and (C) of the Law, 43 P.S. § 753(*l*)(4)(10)(B) and (C), and section 402.1 of the Law, added by § 5 of the Act of July 6, 1977, P.L. 41, *as amended,* 43 P.S. § 802.1.