Dr. Keith KULL, Appellant

v.

Dr. Amadou GUISSE, Ms. Kanchan Kumar, Ms. Glenna Gebhard, Dr. Francis Vasko, Dr. Larry Mugridge, and Dr. Lyn Phy (McQuaid).

Dr. Keith Kull, Appellant

v.

Dr. Paul Ache, Dr. Anke Walz, Dr. Deborah Frantz, Mr. Randy Schaeffer, Mr. Deepak Khanna, Dr. Rudolph Mayrhofer.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2013.
Decided Oct. 16, 2013.
Publication Ordered Dec. 16, 2013.

Donald P. Russo, Bethlehem, for appellant.

Claudia M. Tesoro, Senior Deputy Attorney General, Philadelphia, for appellees.

BEFORE: SIMPSON, Judge, and LEAVITT, Judge, and McCULLOUGH, Judge.

OPINION BY Judge SIMPSON.

## I. Introduction

In these consolidated appeals, Dr. Keith Kull (Kull) seeks review of two orders of the Court of Common Pleas of Berks County (trial court) that sustained Defendants' preliminary objections to Kull's fourth amended complaints (amended complaint) against two sets of Defendant–Appellees (Appellees),[1] and dismissed Kull's claims against Appellees' with prejudice. In his amended complaint, Kull, a former assistant professor at Kutztown University (KU), brought intentional tort claims against Appellees following a decision by KU's administration, based on recommendations from its tenure and promotion committees, to deny Kull's applications for tenure and promotion. In dismissing Kull's complaint, the trial court reasoned, Appellees' actions in denying Kull's tenure and promotion applications fell within the scope of Appellees' employment with KU. Further, KU is a member of the Pennsylvania State System of Higher Education (SSHE), a Commonwealth entity entitled to immunity under what is commonly known as the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521–28. Therefore, the trial court held Appellees, as Commonwealth employees, were immune from Kull's intentional tort claims.

On appeal, Kull contends the trial court erred in holding Appellees were entitled to the defense of sovereign immunity where their deviating conduct fell outside the scope of their employment. Kull further cites the Pennsylvania Supreme Court's recent decision in *Goldman v. Southeastern Pennsylvania Transportation Authority*, —— Pa. ——, 57 A.3d 1154 (2012), which held that the Southeastern Pennsylvania Transportation Authority (SEPTA) is not an "arm of the state" for purposes of sovereign immunity under the Eleventh Amendment to the United States Constitution. In light of *Goldman*, Kull asserts, an issue exists as to whether the SSHE is

1. In *Kull v. Guisse*, 568 C.D.2013, Appellees are Dr. Amadou Guisse, Ms. Kanchan Kumar, Ms. Glenna Gebhard, Dr. Francis Vasko, Dr. Larry Mugridge and Dr. Lyn Phy. In *Kull v. Ache*, 569 C.D. 2013, Appellees are Dr. Paul Ache, Dr. Anke Walz, Dr. Deborah Frantz, Mr. Randy Schaeffer, Mr. Deepak Khanna, and Dr. Rudolph Mayrhofer. Appellees are all tenured Kutztown University faculty members.

entitled to sovereign immunity. For the reasons that follow, we affirm.

## II. Background

In an opinion in support of its order, the trial court found the following facts. KU hired Kull in the summer of 2004 as a tenure-track assistant professor in its Mathematics and Computer Science Department. When that department split a year later, Kull agreed to an assignment in the Mathematics Education Subgroup of the Mathematics Department. Over the next five years, Kull taught courses in the Mathematics Department. He also taught a number of courses outside the Mathematics Department, in the College of Education.

Pursuant to the terms of the collective bargaining agreement (CBA) between the SSHE and the Association of Pennsylvania State College and University Faculties, the union, Kull applied for tenure and promotion to associate professor during his fifth year of probationary employment. Kull submitted his applications to the Mathematics Department's Promotion, Evaluation and Tenure Committee (PETC), which included Appellees Guisse, Kumar, Gebhard, Vasko, Mugridge, Phy, Walz, Frantz, Schaeffer and Khanna.

Both the PETC and Appellee Ache, who chaired the Mathematics Department during the relevant period, provided written recommendations against tenure to the University Tenure Committee (UTC). Appellee Mayrhofer, a professor in the Chemistry Department, chaired the UTC. Appellee Ache and the PETC also provided written recommendations against promotion to the University Promotion Committee (UPC).

Ultimately, Appellee Mayrhofer, as chair of the UTC, recommended against tenure. After deliberation, KU's administration denied Kull tenure and a promotion. KU permitted Kull to teach for one additional year without tenure.

In recommending against tenure and promotion, the committees cited several recurring issues related to Kull's teaching effectiveness, which were identified by annual peer and student evaluations. These included concerns about Kull's interactions with students; he needed to improve his interpersonal skills and professionalism in the classroom. In addition, the committees noted Kull made repeated mathematical errors in his classroom presentations.

KU's evaluation and tenure procedures are governed by the CBA between the union and the SSHE. In his amended complaint, Kull averred Appellees failed to adhere to the CBA's procedures in a number of ways. Kull's averments include: failure to include his work outside the Mathematics Department in his evaluations; failure to return peer evaluations in a timely manner in order for them to be of constructive use; failure to give Kull an opportunity to discuss the evaluations before they were officially recorded; failure to have an appropriate expert evaluate Kull; and, inclusion of evaluation factors not specifically referenced in the CBA, such as Kull's interpersonal skills and mistakes in the actual mathematics of Kull's classroom presentation.

In 2010, Kull began civil actions against Appellees by writ of summons. In an initial complaint filed in April 2011, Kull asserted claims under state tort law for defamation (Count I), invasion of privacy/false light (Count II), and, intentional interference with contractual relations (Count III). Kull also asserted a federal claim under 42 U.S.C. § 1983 for violation of civil rights (intentional deprivation of liberty interest in reputation and denial of equal protection) (Count IV).

In light of the Section 1983 civil rights claim, Appellees removed the case to federal district court. In response, Kull filed an amended complaint dropping the Section 1983 claim. As a result, the federal court remanded the case back to the state court.

Thereafter, Appellees filed preliminary objections asserting immunity as Commonwealth employees under the Sovereign Immunity Act. In response, Kull filed a second amended complaint with added factual allegations. Appellees again filed preliminary objections based on sovereign immunity. Kull filed preliminary objections to Appellees' objections. Ultimately, the trial court sustained Appellees' preliminary objections, but permitted Kull to again amend his complaint to add additional factual allegations.

In his third amended complaint, Kull again included the three intentional tort claims: defamation, invasion of privacy/false light and intentional interference with contractual relations. However, Kull also included the previously abandoned claim under 42 U.S.C. § 1983 for violation of civil rights. Appellees again removed the case to federal district court. Kull then indicated to the federal court that he mistakenly included the federal civil rights claim.

To that end, Kull filed his fourth amended complaint without the civil rights claim, which the federal district court again remanded to the state court. Appellees again filed preliminary objections based on sovereign immunity. Of significance to our reasoning, this time Kull failed to file preliminary objections challenging Appellees' assertion of sovereign immunity on preliminary objections.

In September 2012, following oral argument, the trial court issued two orders sustaining Appellees' preliminary objections and dismissing Kull's claims against Appellees with prejudice. Kull filed notices of appeal from the trial court's orders in the Superior Court, which transferred the appeals to this Court.

In his Rule 1925(b) Statement of Errors Complained of on Appeal, Kull argued Appellees were not entitled to the defense of sovereign immunity because their conduct deviated from the tenure and promotion policies and procedures set forth in the CBA. As such, Kull asserted Appellees' conduct exceeded the scope of their employment. In support of his position, Kull cited *Schnupp v. Port Authority of Allegheny County,* 710 A.2d 1235 (Pa.Cmwlth. 1998) (conduct that is willful and wanton is not protected by Pennsylvania's immunity statutes).

In response to Kull's 1925(b) Statement, the trial court issued an order notifying Kull that any issues not included in his Statement would be deemed waived. *See* Tr. Ct. Order, 1/19/12; Original Record (O.R.) at Item # 34. The trial court gave Kull 21 days to amend his Statement. *Id.* However, Kull did not do so.

In March 2013, the trial court issued an opinion in support of its orders. *See* Tr. Ct. Mem. Op., 3/11/13. The trial court rejected Kull's primary argument that Appellees' failure to strictly follow the CBA's policies and procedures for tenure and promotion evaluation established that Appellees' conduct exceeded the scope of their employment. The CBA is an agreement between Appellees' union and SSHE, Appellees' employer. However, the CBA is not a set of directives given by SSHE as an employer to Appellees as employees. Thus, Appellees' minor deviations from the CBA's policies or procedures regarding tenure or promotion, even if added together, do not remove Appellees' conduct from the scope of their employment.

The trial court analyzed the scope of employment issue in accord with Restatement (Second) of Agency § 228 (1958),[2] which defines conduct within the scope of employment as:

(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master. (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

*Id.*

First, the trial court reasoned, there is no question that evaluation of colleagues for promotion and tenure is a part of Appellees' duties and responsibilities as KU faculty members. Second, although Kull avers that Appellees did not comply with the CBA's policies and procedures for evaluations and communications, Appellees' evaluations and communications occurred within the authorized time and space. The parties do not dispute that much of Appellees' conduct occurred on campus during business hours. Third, even assuming Appellees made statements unfavorable to Kull partly because of their own animosity toward him, Appellees acted at least in part to serve KU's expectations that they perform an evaluation of Kull's teaching and scholarship skills. *See Brumfield v. Sanders*, 232 F.3d 376 (3d Cir.2000) (mere existence of personal motivation is insufficient to relieve employer from liability for employee's torts where conduct benefitted employer and was generally within employees' scope of employment).

Further, referring to Restatement (Second) of Agency § 229 (1958) (relating to kind of conduct within scope of employment), the trial court reasoned that none of the averred conduct really departed from the nature of the conduct authorized by the scope of Appellees' employment, namely, Appellees' evaluation of Kull for tenure and promotion. In so doing, the trial court rejected Kull's argument, based on Section 229, Comment (e), that numerous slight departures from the authorized conduct may place the entire activity beyond the scope of employment. The trial court observed that nothing in Section 229 of the Restatement mandates that any particular deviation or combination of deviations from authorized conduct renders such conduct outside the scope of employment. To that end, Restatement (Second) of Agency § 230 (1958) provides, "An act, although forbidden, or done in a forbidden manner, may be within the scope of employment."

Summarizing, the trial court recognized that Appellees were instructed and expected to assess Kull and communicate their assessments to KU, their employer. Under the Restatement (Second)

---

**2.** In *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir.2000), the Third Circuit Court of Appeals recognized that "Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct 'within the scope of employment.' *See Butler v. Flo-Ron Vending Co.*, [557 A.2d 730 (Pa.Super.1989), *appeal denied*, 523 Pa. 646, 567 A.2d 650 (1989)]; *Aliota v. Graham*, 984 F.2d 1350, 1358 (3d Cir.1993)." Commonwealth Court has also adopted this standard for determining whether an employee's actions fall within the scope of employment. *See Sanchez by Rivera v. Montanez*, 165 Pa.Cmwlth. 381, 645 A.2d 383 (1994).

of Agency and related case law, Appellees' conduct in the course of evaluating Kull fell within the scope of their employment regardless of whether they acted in strict compliance with the policies and procedures of the CBA. Kull appeals.[3]

### III. Discussion

### A. Scope of Employment

#### 1. Argument

 Kull first contends the trial court erred in holding Appellees are entitled to the defense of sovereign immunity because they deviated from the scope of their employment by failing to follow the tenure and promotion policies and procedures set forth in the CBA. Kull's argument is as follows. Generally, sovereign immunity protects Commonwealth officials and employees acting within the scope of their duties from civil liability. 1 Pa.C.S. § 2310. KU, a state-owned university, is part of the SSHE. Section 2002–A of the Public School Code of 1949.[4] An officer or employee of a state-owned educational institution is a Commonwealth employee. *Pearson v. Unemployment Comp. Bd. of Review*, 689 A.2d 352 (Pa.Cmwlth.1997). However, conduct constituting a crime, actual fraud, actual malice or willful misconduct is considered to be outside the employee's scope of employment for immunity purposes. *Schnupp.*[5]

Kull also points out that Section 228(2) of the Restatement provides, "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." RESTATEMENT (SECOND) OF AGENCY § 228(2) (1958). In addition, a single act, even minute in departure from that authorized could allow an inference that an employee exceeded his or her scope of employment. *See* RESTATEMENT (SECOND) OF AGENCY § 229 (1958), Comment (e). Further, numerous slight departures from the authorized conduct may place the entire activity beyond the scope of employment. *Id.*

---

3. Our review of a trial court's order sustaining preliminary objections is limited to determining whether the trial court erred as a matter of law or abused its discretion. *E. Lampeter Twp. v. Cnty. of Lancaster*, 696 A.2d 884 (Pa.Cmwlth.1997). In order for a trial court to sustain preliminary objections, it must appear with certainty the law will not allow recovery; any doubt must be resolved in favor of the non-moving party. *Id.* All well-pled facts in the complaint, and reasonable inferences arising from those facts, are accepted as true. *Id.* However, unwarranted inferences, conclusions of law, argumentative allegations or expressions of opinion need not be accepted. *Myers v. Ridge*, 712 A.2d 791 (Pa.Cmwlth.1998).

4. Act of March 10, 1949, P.L. 30, art. XX–A, added by the Act of November 12, 1982, P.L. 660, *as amended*, 24 P.S. § 20–2002–A.

5. Kull's reliance on *Schnupp* is misplaced. *Schnupp* involved a claim of intentional infliction of emotional distress, and a civil rights claim under 42 U.S.C. § 1983, arising out of an arrest by police officers of the Port Authority of Allegheny County. We ultimately determined in *Schnupp* that the plaintiff alleged facts sufficient to state a cause of action under 42 U.S.C. § 1983 for deprivation of a federally guaranteed right. We therefore reversed the trial court's order granting summary judgment for the defendants.

In *Schnupp*, we recognized that governmental immunity for local agency employees does not protect against acts of willful misconduct. *See* 42 Pa.C.S. §§ 8542(b), 8550. Here, as the trial court aptly noted, the willful misconduct exception in governmental immunity "has no partner in the Sovereign Immunity Act." Tr. Ct. Mem. Op., 3/11/13 at 6–7. Thus, as discussed more fully below, state employees do not lose their sovereign immunity protection for intentional torts committed within the scope of their employment. *See Williams v. Stickman*, 917 A.2d 915 (Pa. Cmwlth.2007); *La Frankie v. Miklich*, 152 Pa.Cmwlth. 163, 618 A.2d 1145 (1992).

In addition, Kull asserts, a question of material fact exists as to whether Appellees' conduct fell within the scope of their employment. Analysis of this factual issue falls within the province of a jury. *See, e.g., Orr v. William J. Burns Int'l Detective Agency*, 337 Pa. 587, 12 A.2d 25 (1940) (a servant's scope of employment is necessarily dependent on circumstances, a hard and fast rule cannot be laid down as to the scope of any employment; it is ordinarily a question for the jury whether or not a particular act comes within the scope of a servant's employment).

Here, Kull argues, Appellees, while engaged in the tenure and promotion evaluation process, did not follow the policies and procedures set forth in the CBA. Article 15 of the CBA provides for a probationary period of five years for each faculty member. Am. Compl. (*Kull v. Guisse*)[6] at ¶ 23. During the probationary period, faculty members shall be observed and evaluated in accord with Article 12 of the CBA (relating to performance review and evaluation of faculty). *Id.*

Article 12B of the CBA, titled "Categories for Performance Review and Evaluation of Faculty," provides in part:

> The following categories shall serve as the uniform system-wide basis for the evaluation of FACULTY MEMBERS at each University. The categories listed below shall be applied in the performance review and evaluation of … probationary non-tenured faculty … and all applicants for promotion…. When evaluating the data, the appropriate evaluator(s) shall give greater weight to the quality of the performance reflected in the data than to the quantity of the data.
> 1. Effective teaching and fulfillment of professional responsibilities.

> a. This will be indicated, when applicable, by such items as: student evaluations, classroom visitations, quality of syllabi, quality of student advisement, willingness to accept departmental work assignments, timely execution of work assignments, and any other data deemed appropriate and agreed to by the FACULTY and Administration at local meet and discuss.

> b. Evaluation of teaching effectiveness and fulfillment of professional responsibilities will not be based on a single datum. A combination of all appropriate data will be used to give sufficient evidence for an overall judgment of teaching effectiveness and fulfillment of professional responsibilities.

> \* \* \*

> 2. Continuing scholarly growth.

> This will be indicated, when applicable, by such items as: development of experimental programs (including distance education), papers delivered at national and regional meetings of professional societies; regional and national awards; offices held in professional organizations; invitational lectures given … publication record … and any other data agreed to by the FACULTY and Administration at local meet and discuss.

> 3. Service: contribution to the University and/or community.

> This will be indicated, when applicable, by such items as: quality of participation in program, department, college and University committees … voluntary membership in professionally oriented, community based organizations reasonably related to the FACULTY MEMBER'S discipline; lectures and consultations … and any other data

---

6. Reproduced Record (R.R.) at Item No. 1. Kull includes similar paragraphs in his fourth amended complaint in *Kull v. Ache. See* Appellant's Joint Br. & App. at 1a.

agreed to by the FACULTY and Administration at local meet and discuss.

Am. Compl. at ¶ 24.

Kull also cites Article 12(C)(1)(b)(5) of the CBA, which provides:

The evaluation process for FACULTY MEMBERS with work assignments outside of their departments shall be conducted by the FACULTY in the unit where the work is performed and forwarded to FACULTY MEMBER'S department for inclusion in his/her total evaluation.

Am. Compl. at ¶ 26.

Kull further cites Article 12(C)(1)(b)(2) of the CBA, which provides:

Prior to putting a classroom visitation evaluation in writing, there shall be a discussion of the observations with the FACULTY MEMBER. These evaluations shall not displace or diminish the importance of other evidence of the degree to which the FACULTY MEMBER'S responsibilities have been met during the evaluation period.

Am. Compl. at ¶ 28.

Kull further averred the CBA allows an applicant for tenure to speak before the UTC and UPC. Article 15(E)(3) provides: "Each applicant for tenure shall have the right to request and make an appearance before the University-wide tenure committee to speak on his/her own behalf, before the committee submits its recommendations to the President or his/her designee." Am. Compl. at ¶ 30. Regarding promotions, Article 16(B)(10) similarly provides: "Each applicant for promotion shall have the right to request and make an appearance before the University-wide promotion committee to speak on his/her own behalf, before the committee submits its recommendations to the President or his/her designee." *Id.*

Here, Kull asserts Appellees failed to comply with the above CBA provisions: by failing to request observations and evaluations from the College of Education where he taught 14 classes (Article 12(C)(1)(b)(5)); by failing to discuss classroom evaluations with him before putting them in writing (Article 12(C)(1)(b)(2)); and, by not granting Kull a hearing before the UPC regarding his application for a promotion (Article 16(B)(10)).

Kull further asserts Appellees deviated from the CBA by: not searching for the truth; violating his academic freedom; failing to provide means for implementing suggestions and recommendations; failing to evaluate by measurable behaviors; failing to use all data presented; and, by selecting data that would only be useful in a negative way. *See* Am. Compl. at ¶¶ 69A–K.

In addition, Kull avers Appellees based tenure and promotion decisions on factors not included in the CBA. To that end, Kull asserts the ultimate reasons given in the UTC and UPC recommendations to deny tenure and promotion: Kull's need to improve his interpersonal skills and professionalism in the classroom, and Kull's mathematically flawed presentations in the classroom are not reasons to deny him tenure under Article 12 of the CBA. *See* Am. Compl. at ¶¶ 51–52.

Summarizing, Kull argues that Appellees' deviant evaluation process, even if considered to be a series of minor departures from the evaluation process set forth in the CBA, are nonetheless procedural and evaluative departures from those policies and procedures authorized by their employment. Therefore, in light of the Supreme Court's rationale in *Orr*, that it is ordinarily a question of fact for the jury whether or not a particular act comes within the scope of a servant's employment, Kull argues the facts pled here raise

a genuine issue of material fact as to whether Appellees acted outside the scope of their employment. Kull urges that the trial court erred in dismissing his complaint on preliminary objections.

### 2. Analysis

■ To begin, we note that "the Commonwealth, and its officials and *employees acting within the scope of their duties,* shall ... enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310 (emphasis added). Nonetheless, sovereign immunity is waived in certain limited circumstances. 42 Pa.C.S. § 8522. In essence, sovereign immunity may be overcome where the party can establish: (1) a common law or statutory cause of action under which damages could be recoverable if not for the immunity defense, and (2) the alleged negligent act falls within one of the nine specific exceptions provided in 42 Pa.C.S. § 8522(b). *LaChance v. Michael Baker Corp.,* 869 A.2d 1054 (Pa.Cmwlth.2005).

■ However, state employees do not lose their immunity for intentional torts, provided they are acting within the scope of their employment. *See Williams v. Stickman,* 917 A.2d 915 (Pa.Cmwlth.2007); *La Frankie v. Miklich,* 152 Pa.Cmwlth. 163, 618 A.2d 1145 (1992). In *La Frankie,* the plaintiff brought intentional tort claims against a state trooper for abuse of legal process, false arrest and malicious prosecution. Given these claims, we reasoned that the only question to be resolved was whether the trooper was acting within the scope of his duties when he investigated the crimes and arrested the plaintiff. Because the plaintiff admitted in his pleadings that the trooper acted within the scope of his employment and the plaintiff's claims did not fall within any of the exceptions to sovereign immunity, we determined the trooper was protected by immunity from the plaintiff's intentional tort claims.

Importantly, in *Yakowicz v. McDermott,* 120 Pa.Cmwlth. 479, 548 A.2d 1330 (1988), we held that a Commonwealth employee who is acting within the scope of his duties in performing an evaluation of another employee is protected by sovereign immunity from the imposition of liability for alleged defamation based on the written evaluation. *See also Wilson v. Marrow,* 917 A.2d 357 (Pa.Cmwlth.2007) (defamation is intentional tort; Commonwealth employee is entitled to sovereign immunity if acting within the scope of employment); *Holt v. Nw. Pa. Training P'ship Consortium, Inc.,* 694 A.2d 1134 (Pa.Cmwlth.1997) (claim for intentional interference with contract barred by immunity).

In the present case, Appellees, as KU employees, are Commonwealth parties entitled to the protection of sovereign immunity with respect to acts within the scope of their employment. *Pearson.* In his complaint, Kull advances three separate intentional tort claims: defamation; invasion of privacy/false light; and intentional interference with contractual relations. As discussed above, there is no waiver of sovereign immunity for intentional tort claims. *La Frankie.*

■ Consequently, the issue of whether Appellees are protected by sovereign immunity depends on whether they were acting within the scope of their employment in evaluating Kull's tenure and promotion applications. *See Cimino v. Di Paolo,* 786 A.2d 309 (Pa.Cmwlth.2001) (where plaintiff's tort claim did not fall within exceptions to sovereign immunity, defendant will be protected by immunity if it is determined he acted within the scope of his duties).

As discussed above, Kull contends Appellees deviated from the scope of their employment by failing to follow the CBA's policies and procedures in evaluating him for tenure and promotion. Appellees, on the other hand, assert the trial court properly applied the criteria in Section 228 of Restatement (Second) of Agency and correctly determined Appellees' participation in the tenure and promotion process, including their negative recommendations in Kull's case, fell well within their scope of employment as KU faculty members.

First, as indicated by the CBA, Appellees, as faculty and UTC and UPC members, are employed to perform acts including the evaluation of Kull for tenure and promotion. These acts include compiling evaluation information and ultimately making recommendations. *See* Am. Compl. at ¶¶ 22–24.

Second, Appellees acted within the authorized time and space limits. Here, Appellees' actions occurred largely on campus within reasonable hours. Moreover, as professionals, Appellees enjoy discretion as to where and when they would meet their professional responsibilities.

The third factor in the trial court's Section 228 analysis is critical. Conduct is within the scope of employment if it is actuated, at least in part, to serve the employer.[7] Here, in accord with the CBA, faculty members play an important role in the tenure and promotion process. As such, Appellees' participation in the tenure process in the present case is "actuated, at least in part," to serve the interests of their employer, KU and the SSHE, in evaluating faculty in order to provide a high quality education. *See* RESTATEMENT (SECOND) OF AGENCY § 228(1)(c) (1958). Moreover, nothing in Kull's amended complaint indicates that Appellees, in evaluating Kull, had a purpose disassociated from that of Employer's interest in evaluating Kull, a probationary employee, for tenure.

Nevertheless, the crux of Kull's appeal is that Appellees' actions were so unfair and unwarranted in substance, and so procedurally tainted due to deviations from CBA-required procedures, that Appellees essentially disregarded their employer's interests. As such, Kull argues Appellees' actions fell outside the scope of their employment.

On this issue, the trial court adopted the Third Circuit Court of Appeals' Section 228 scope-of-employment analysis in *Brumfield v. Sanders*. In *Brumfield*, the Court, citing *Butler v. Flo–Ron Vending Co.*, 383 Pa.Super. 633, 557 A.2d 730 (1989), *appeal denied*, 523 Pa. 646, 567 A.2d 650 (1989), reasoned that even debatable acts or acts contrary to policy, if done in furtherance of employer's interests, do not exceed the employee's scope of employment. *See also* RESTATEMENT (SECOND) OF AGENCY § 230 (1958) (an act, although forbidden, or done in a forbidden manner may be within the scope of employment); *Aliota v. Graham*, 984 F.2d 1350 (3d Cir.), *cert. denied*, 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993) (even false statements in a defamation case may be considered as conduct within an employee's scope of employment).

Here, Appellees assert, Kull did not specifically aver Appellees were "out to get him" for personal reasons. However, even allegations of such personal animosity would not alter the result if Appellees' evaluations and recommendations were made, at least in part, to advance KU's interests. *Brumfield; Butler.*

---

7. The fourth factor in a Restatement (Second) of Agency § 228 (1958) analysis, whether appropriate force was used, is inapplicable here.

Rather, Kull claimed Appellees repeatedly failed to comply with the CBA's tenure evaluation policies and procedures. He argues these deviations, considered together, indicate Appellees essentially disregarded KU's interests and thus acted outside the scope of their employment. As support, Kull cites the Comment to Section 229 of the Restatement, which notes that a number of slight departures from the authorized conduct may place the entire activity beyond the scope of employment. *See* RESTATEMENT (SECOND) OF AGENCY § 229 (1958), Comment (e).

We reject Kull's contention. Even assuming Appellees failed to comply with the CBA as Kull averred, the CBA does not define the scope of Appellees' employment as KU faculty members. Rather, it is a labor agreement between KU/SSHE as a public employer and the KU faculty members' union. Consequently, in evaluating Kull and recommending against his tenure, Appellees acted entirely within the scope of their employment with KU, regardless of whether they meticulously complied with all of the CBA's policies and procedures for tenure and promotion evaluation. *Brumfield; Butler.*

For these reasons, we discern no error or abuse of discretion in the trial court's determination that Appellees' alleged violations of the CBA's policies and procedures in conducting an evaluation of Kull for purposes of tenure and promotion did not remove their conduct from the scope of their employment. Therefore, Appellees are protected by sovereign immunity from Kull's intentional tort claims. *La Frankie; Yakowicz.*

## B. *Goldman*

In light of the Pennsylvania Supreme Court's recent decision in *Goldman,* which held that SEPTA is not an "arm of the state" and thus not "one of the United States" for purposes of immunity under the Eleventh Amendment [8] from suits under federal law, Kull contends an issue exists as to whether the SSHE is a Commonwealth agency entitled to sovereign immunity.

In *Goldman,* the Supreme Court held that SEPTA was not "an arm of the state" and thus not entitled to claim sovereign immunity under the Eleventh Amendment from injury lawsuits brought by railroad employees under the Federal Employers' Liability Act (FELA) [9] in state court. In determining whether SEPTA is an arm of the state, the Supreme Court noted that SEPTA's enabling legislation provided SEPTA could not legally bind the Commonwealth for any debt or obligation. Further, neither the Governor nor the General Assembly had the right to veto actions taken by the 15–member SEPTA board of directors. SEPTA also had an independent ability to raise revenue not dependent upon approval or financial backing of the Commonwealth, including the right to set fares and borrow money. As such, the Supreme Court concluded SEPTA is not an arm of the state and thus not "one of the United States" entitled to Eleventh Amendment immunity.

In view of *Goldman,* Kull argues an issue exists as to whether SSHE is an arm of the state entitled to sovereign immunity. We disagree.

**8.** The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST., amend. XI.

**9.** 45 U.S.C. §§ 51–60.

*Goldman* does not address the Commonwealth's sovereign right to determine whether, and to what extent, it may be sued in its own courts *on state law claims*. Rather, *Goldman* dealt with SEPTA's entitlement, as an arm of the state, to assert a defense of sovereign immunity under the Eleventh Amendment in state court against claims by federal employees under FELA. Consequently, Goldman has no effect on Appellees' entitlement here, as Commonwealth employees, to assert immunity under Pennsylvania's Sovereign Immunity Act to intentional tort claims brought under state law.

### C. Raising Sovereign Immunity in Preliminary Objections

■ As a final argument, Kull contends sovereign immunity is an affirmative defense which ordinarily should be raised as new matter, but may be raised in preliminary objections when a delay in ruling on it would serve no purpose. *See Wurth by Wurth v. City of Philadelphia*, 136 Pa. Cmwlth. 629, 584 A.2d 403 (1990) (sovereign immunity may be raised in preliminary objections where it is apparent on the face of the pleading that the cause of action does not fall within the statutory exceptions to sovereign immunity). Kull argues he challenged Appellees' assertion of sovereign immunity in preliminary objections at oral argument before the trial court. Nevertheless, he failed to raise it in his 1925(b) Statement on appeal from the trial court. As a result, the trial court deemed this issue waived. Because he raised this issue before the trial court, Kull argues it is fundamentally unfair for the trial court to take the position that he waived it by failing to include it in his 1925(b) Statement.

■ Issues not included in a party's 1925(b) Statement are waived and will not be addressed on appeal. *Commonwealth*

*v. Hill*, 609 Pa. 410, 16 A.3d 484 (2011); *In re A.B.*, 63 A.3d 345 (Pa.Super.2012). In response to Kull's 1925(b) Statement, the trial court issued an order notifying Kull that any issues not included in his Statement will be deemed waived. The trial court gave Kull 21 days to amend or supplement his Statement. Tr. Ct. Order, 1/19/12. However, Kull did not do so. Therefore, we discern no error in the trial court's determination that Kull waived the issue of whether Appellees prematurely raised the sovereign immunity defense in preliminary objections by failing to include it in his 1925(b) Statement. *Hill; In Re A.B.*

In addition, we note, Kull failed to raise this issue in his Statement of Questions Involved in his brief to this Court. As such, it may also be considered waived on this basis. Pa. R.A.P. 2116(a) (no question will be considered unless it is stated in the statement of questions involved or reasonably suggested thereby); *Appeal of Gemstar/Ski Bros.*, 133 Pa.Cmwlth. 115, 574 A.2d 1201 (1990).

■ In any event, the proper means to challenge the assertion of an immunity defense in preliminary objections is to file preliminary objections to the objections raising immunity. *Cnty. of Allegheny v. Dominijanni*, 109 Pa.Cmwlth. 484, 531 A.2d 562 (1987). Failure to do so results in a waiver of the right to challenge the manner of raising an immunity defense. *Swartz v. Masloff*, 62 Pa.Cmwlth. 522, 437 A.2d 472 (1981). Here, Kull failed to file preliminary objections to the immunity defense raised in Appellees' preliminary objections to the fourth amended complaint. Accordingly, the trial court did not err or abuse its discretion in holding that Kull waived his challenge to Appellees' assertion of sovereign immunity in their preliminary objections. *Id.*

### IV. Conclusion

For the above reasons, we discern no error in the trial court's orders sustaining Appellees' preliminary objections and dismissing Kull's amended complaint in both cases with prejudice. Accordingly, we affirm.

### *ORDER*

AND NOW, this 16th day of October, 2013, for the reasons stated in the foregoing opinion, the orders of the Court of Common Pleas of Berks County sustaining Appellees' preliminary objections and dismissing Appellant Kull's fourth amended complaints in the above-captioned matters are **AFFIRMED.**