NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1099
_____

MARK TINGEY,
Appellant

v.

PROBATION OFFICER DAGE GARDNER; CAITLIN MCLAUGHLIN, Supervising
Probation Officer; JOHN R. TUTTLE, Chairman Board of Probation and Parole;
EDWARD L. BURKE, Member Board of Probation and Parole; LESILE M. GREY,
Member Board of Probation and Parole; GRAIG R. MCKAY, Member Board of
Probation and Parole; MICHAEL L. GREEN, Member Board of Probation and Parole;
JEFFREY R. IMBODEN, Member Board of Probation and Parole; MICHAEL
POTTEIGER, Member Board of Probation and Parole


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-17-cv-00827
District Judge: The Honorable Jan E. DuBois

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 21, 2020

Before: SMITH, *Chief Judge*, McKEE, and JORDAN, *Circuit Judges*

(Filed: September 22, 2020)
_____

OPINION[*]
_____


SMITH, *Chief Judge*.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

A Utah state court sentenced Mark Tingey to 300 days in jail and three years of probation for possessing child pornography.  After Tingey was released from jail, and after he promised not to view pornography while on probation, the court allowed him to serve that probation, and be supervised, in Philadelphia so that he could be with his wife. But six months into Tingey's probation, agents found signs of porn on his computer. So Pennsylvania probation officer Dage Gardner requested Tingey report to his parole officer as a result of violating the terms of his probation.

Tingey admitted the violation and relinquished his right to a hearing. He served two months in a halfway house for the violation.

Despite his earlier admission, Tingey now contends there was no porn on his computer so that Gardner lacked probable cause to arrest him. He also claims that Gardner coerced him into admitting the violation, so his two-month detention shocks the conscience. He sued under 42 U.S.C. § 1983, bringing a false imprisonment claim and a substantive due process claim against Gardner and his supervisor, plus a supervisory liability claim against the supervisor.

As the District Court correctly concluded,[1] all three claims fail.

\*

---

[1] The District Court exercised jurisdiction under 28 U.S.C. §§ 1331 and 1367, awarding Gardner and his supervisor summary judgment under Federal Rule of Civil Procedure 56. *See* No. 17-827, 2019 WL 6828638 (E.D. Pa. Dec. 13, 2019). We have jurisdiction over Tingey's timely appeal under 28 U.S.C. § 1291, and review the District Court's judgment de novo. *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 609 (3d Cir. 2018).

*First*, Tingey's false imprisonment claim runs aground at two places. For starters, Tingey's complaint alleges only the intentional tort of false imprisonment under Pennsylvania law. *See* App. 15 ¶ 40 (alleging "Defendants maliciously, intentionally, recklessly and/or willfully caused the false arrest and imprisonment of the plaintiff . . . *in violation of state law*" but never mentioning the U.S. Constitution or the Fourth Amendment (emphasis added)). Yet Pennsylvania has not waived its sovereign immunity from intentional torts against state officers like Gardner. *See Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Commw. Ct. 2013).

And even if we read Tingey's complaint to allege a parallel Fourth Amendment violation, it would smack into *Heck v. Humphrey*'s favorable-termination rule. *See* 512 U.S. 477, 486-87 (1994) ("[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ."). In other words, because Tingey has not successfully challenged the underlying probation violation, he cannot bring a Fourth Amendment claim. *See also Williams v. Consovoy*, 453 F.3d 173, 177-78 (3d Cir. 2006) (holding *Heck* precluded a parolee's § 1983 claim alleging his parole officer lacked probable cause to seize him for a parole violation because the parolee hadn't successfully challenged the parole violation).

\*     \*

3

*Second*, his substantive due process claim fails three times over. For one, Tingey cabins his substantive due process claim to his halfway-house detention *after* admitting the probation violation.  So any liability for events during that detention would fall to the halfway house—not to Gardner, who lacked personal involvement with Tingey's detention. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (reiterating that individual defendants must be personally involved in the alleged wrongdoing to face civil rights liability). Strike one.

What's more, even if we accept Gardner as the proper defendant, what allegedly happened here—two months of halfway-house detention after admitting a probation violation—hardly shocks the conscience. *See County of Sacramento v. Lewis*, 523 U.S. 833, 847-49 (1998) (noting that "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as . . . conscience shocking'" and that conduct "[]justifiable by any government interest" is not conscience-shocking (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992))). Strike two.

And at all events, Gardner's substantive due process claim crashes into the more-specific-provision rule. *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). Tingey's due process claim characterizes his halfway-house detention as "arbitrary," "violat[ing] the decency of civilized conduct," "malicious," and "deliberate[ly] indifferen[t] to [his] right

to liberty and well being." App. 16 ¶¶ 44–47. But those characterizations could just as easily support an Eighth Amendment claim. *See* U.S. Const. amend. VIII. (prohibiting cruel and unusual punishments). So because Tingey's substantive due process claim could be repackaged under a more specific constitutional provision, it is "not cognizable under the Due Process Clause." *DeLade v. Cargan*, No. 19-1908, 2020 WL 5001788, \*4, __ F.3d __ (3d Cir. Aug. 25, 2020). Strike three.

\* \* \*

*Finally*, Tingey's supervisory liability claim doesn't even make it to the starting gate. His opening brief devotes just a single paragraph (seven lines, fifty-eight words) to the issue, citing no authority and including no substantive argument besides a conclusory "[f]or the above stated reasons" sentence. Appellant Br. 40; *see also* Reply Br. (failing to mention supervisory liability at all). That "passing reference" does "not suffice to bring th[is] issue before this court." *Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (quoting *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1066 (3d Cir. 1991)).

And even if we excused that "abandon[ment] and waive[r]," *Ghana v. Holland*, 226 F.3d 175, 180 (3d Cir. 2000) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3df Cir. 1993)), as the District Court correctly observed, because Tingey suffered no constitutional injury, there can be no supervisory liability. *See* 2019 WL 6828638, at \*6 (citing *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

\* \* \* \*

We will affirm.